1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  RACHEL MENDOZA GARCIA, Individually, and on Behalf of All Wrongful Death Beneficiaries of ISAAC JOSEPH DURAN, Deceased, | Case No.  1:24-cv-01128-KES-BAM |
| 12 13 | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE |
| 14          Plaintiffs, | TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| 15      v. | (Doc. 5) |
| 16  CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| 17 18          Defendants. | |

19                     **Findings and Recommendations**

20      **I.      Introduction**

21          This action arises from the death of Isaac Joseph Duran ("Decedent") while he was an

22   inmate at Kern Valley State Prison ("KVSP").  Plaintiff Rachel Mendoza Garcia, Decedent's

23   mother, initiated this action both individually and on behalf of all wrongful death beneficiaries

24   against Defendants California Department of Corrections and Rehabilitation ("CDCR"), KVSP

25   Warden Christian Pfeiffer, former CDCR Secretary Kathleen Allison, and CDCR Secretary Jeff

26   Macomber (collectively "Defendants").

27          Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure

28   12(b)(6) and 12(b)(7).  (Doc. 5.)  Plaintiffs opposed the motion on November 12, 2024.  (Doc. 9)

1    Defendants replied on November 18, 2024.  (Doc. 10.)  The motion was referred to the

2    undersigned for the preparation of findings and recommendations and/or other appropriate action.

3    (Doc. 6.)  The Court found the motion suitable for resolution without oral argument pursuant to

4    Local Rule 230(g) and vacated the hearing set for December 6, 2024.  (Doc. 11.)

5         Having considered the parties' briefs, and for the reasons set forth below, the Court will

6    recommend that Defendants' motion to dismiss be granted in part and denied in part.

7    **II.    Summary of Plaintiff's Complaint**

8              <u>Common Allegations</u>

9         On October 14, 2023, at approximately 2:55 p.m., while incarcerated at KVSP, Decedent

10   was attacked by two other inmates, Roland C. Corona and Luis Alvidrez, who used inmate-

11   manufactured weapons.  Decedent sustained multiple stab wounds and was transported to an

12   outside medical facility for a higher level of care.  On November 9, 2023, at approximately 9:14

13   p.m., Decedent was pronounced deceased while under the care of medical staff at Kern Medical

14   Center-Bakersfield.  (Doc. 1-1, Complaint ¶ 21.)

15         Prior to his death, Decedent had bipolar disorder with schizophrenic tendencies.  Due to

16   his mental disability, Decedent was often medicated and was supposed to be housed in a

17   segregation unit.  Decedent was not supposed to be permitted, and should not have been

18   permitted, to be with or around the general population of the prison due to his mental disability.

19   However, on October 14, 2023, CDCR correctional officers permitted Decedent to enter a

20   restricted area (i.e., the yard), which resulted in Decedent being stabbed approximately 17 times.

21   (Compl. ¶ 22.)

22         Plaintiffs assert CDCR's correctional officers knew and/or had reason to know that

23   Decedent was not permitted to enter the yard with the general population due to his mental

24   disability.  Plaintiffs allege that (1) defendants were deliberately indifferent to Decedent's serious

25   and immediate mental and physical health needs, mental illness, and physical pain; (2) defendants

26   failed to properly monitor Decedent to ensure that he was not allowed access to the general

27   population areas within KVSP; and (3) defendants failed to timely step in and aid Decedent,

28   allowing him to be stabbed multiple times.  (Compl. ¶ 23.)

<u>Claims for Relief</u>

Plaintiffs forward the following claims for relief:  (1) failure to protect from harm in violation of the Fourteenth Amendment against all defendants; (2) failure to provide medical care in violation of the Fourteenth Amendment against all defendants; (3) deprivation of the right to familial relationship with Decedent in violation of the Fourteenth Amendment against all defendants; (4) supervisory liability - failure to properly train, supervise and discipline against Defendants Pfeiffer, Allison, and Macomber; (5) negligence – wrongful death against all defendants; (6) right to be free from cruel and punishment in violation of the Eighth Amendment against all defendants; (7) violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") against Defendants Allison, Macomber, Pfeiffer, and DOES 1 through 50; (8) violation of California Civil Code § 52.1 (Tom Bane Act) against all defendants; (9) violation of California Government Code § 845.6 against all defendants; and (10) a survival action pursuant to California Code of Civil Procedure § 377.30 against all defendants.

## III.    Defendants' Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted).  A court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability

1    requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

2    This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its

3    judicial experience and common sense." *Id.* at 679.

4         In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

5    the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551

6    U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins*

7    *v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir.

8    1999). However, the court need not credit "labels and conclusions" or "a formulaic recitation of

9    the elements of a cause of action." *See Twombly*, 550 U.S. at 555.

10        If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

11   amend even if no request to amend the pleading was made, unless it determines that the pleading

12   could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

13   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

14   **IV.    Discussion and Analysis**

15        Defendants seek dismissal on the grounds that: (1) Plaintiffs fail to allege standing to

16   bring a claim on behalf of all wrongful death beneficiaries; (2) Plaintiffs fail to join all wrongful

17   death beneficiaries; (3) Plaintiffs fail to allege a failure-to-protect claim; (4) Plaintiffs fail to

18   allege a denial of medical care claim or a claim that defendants violated Decedent's right to be

19   free from cruel and unusual punishment; (6) Plaintiffs fail to allege a loss of familial relations

20   claims; (7) Plaintiffs fail to allege a claim for failure to properly train, supervise, and discipline

21   against Defendants Pfeiffer, Allison, and Macomber; (8) Plaintiffs fail to state a negligence-

22   wrongful death claim; (9) Plaintiffs' cause of action for violations of the ADA and Rehabilitation

23   Act should be dismissed because it is impermissibly brought against Defendants Macomber,

24   Allison, and Pfeiffer in their individual capacities, and it fails to state a claim; (10) statutory

25   immunities bar Plaintiffs' state law causes of action; (11) the § 1983 claims against CDCR should

26   be dismissed; (12) Plaintiffs' cause of action for violation of Government Code § 845.6 fails to

27   state a claim; (13) certain of Plaintiffs' claims for punitive damages and attorneys' fees are

28   unavailable; and (14) Defendant Allison should be dismissed as she retired on December 2022,

1    months before Decedent was attacked on the yard.  (Doc. 5.)

2        **A.      Standing**

3        The parties agree that Plaintiff Mendoza Garcia, individually, has standing to bring a

4    wrongful death claim in this case.  (*See* Doc. 5 at 12-13 ("Because it does not appear that

5    Decedent had children, based on the allegations in the complaint Plaintiff Mendoza Garcia has

6    standing to bring wrongful-death claim in this case."); Doc. 9 at 9-10.)  Defendants argue,

7    however, that the complaint does not detail how Plaintiff Mendoza Garcia has standing to bring

8    claims "on behalf of all wrongful death beneficiaries" under California Code of Civil Procedure

9    377.60.  (Doc. 5 at 12.)

10        "Standing to bring a wrongful death claim is governed by California Code of Civil

11    Procedure Section 377.60, and the category of persons eligible to bring wrongful death actions

12    are strictly construed." *Nash-Perry v. City of Bakersfield*, No. 1:18-cv-01512 JLT, 2021 WL

13    3883681, at *11 (E.D. Cal. Aug 31, 2021) (internal quotation and citation omitted).  Section

14    377.60, in relevant part, provides:

15        A cause of action for the death of a person caused by the wrongful act or neglect
16        of another may be asserted by any of the following persons or by the decedent's
         personal representative on their behalf:

17        (a) The decedent's surviving spouse, domestic partner, children, and issue of
18            deceased children, or if there is no surviving issue of the decedent, the
             persons, including the surviving spouse or domestic partner, who would be
19            entitled to the property of the decedent by intestate succession.  If the parents
             would be entitled to bring an action under this subdivision, and the parents are
20            deceased, then the legal guardians of the decedent, if any, may bring an action
             under this subdivision as if they were the decedent's parents.

21        (b) (1) Whether or not qualified under subdivision (a), if they were dependent on
22            the decedent, the putative spouse, children of the putative spouse,
             stepchildren, parents, or the legal guardians of the decedent if the parents are
23            deceased.

24            . . .

25        (c) A minor, whether or not qualified under subdivision (a) or (b), if, at the time
             of the decedent's death, the minor resided for the previous 180 days in the
26            decedent's household and was dependent on the decedent for one-half or more
             of the minor's support.

27    Cal. Code. Civ. Proc. 377.60(a)-(c).

28        A decedent's parents become heirs under the wrongful death statute when there is no

                                                5

1    surviving issue.  *See* Cal. Prob. Code § 6402(b); *Chavez v. Carpenter*, 91 Cal. App. 4th 1433,

2    1440 (2001) ("Under the laws of intestate succession, a decedent's parents become heirs where

3    there is no surviving issue.").  Parents also "may sue for the wrongful death of their child if they

4    were dependent on the decedent."  *Id.* at 1445 (quoting Cal. Code Civ. Proc. § 377.60(d)); *see*

5    *also Nash-Perry*, 2021 WL 3883681, at *11.  Thus, a parent may assert a wrongful death claim if

6    there are no children or issue or if the parent is dependent on the decedent.  *Id.* (citation omitted).

7          As indicated, there is no dispute that Plaintiff Mendoza Garcia has standing to bring a

8    wrongful death claim in this action.  Further, in response to Defendants' motion, Plaintiff

9    Mendoza Garcia contends that she is "Decedent's sole wrongful death beneficiary," (Doc. 9 at

10   10).  Defendants do not address this contention or meaningfully dispute that Plaintiff Mendoza

11   Garcia is the sole wrongful death beneficiary.  (Doc. 10 at 6.)  Defendants merely speculate that

12   "it is possible that another person could have the same right as Plaintiff Mendoza Garcia to

13   commence the action or sue as a successor-in-interest of Decedent in the action."  (*Id.*)  Based on

14   Plaintiff Mendoza Garcia's representation that she is Decedent's sole wrongful death beneficiary,

15   she appears to be the *only* person with standing to bring a wrongful death claim in this case.

16         To extent the complaint's allegations suggest that Plaintiff Mendoza Garcia is attempting

17   to bring a wrongful death action on behalf of any wrongful death beneficiary *other than herself*,

18   she is unable to do so.  The Court therefore will recommend that Defendants' motion to dismiss

19   based on Plaintiff Mendoza Garcia's lack of standing to bring claims "on behalf of all wrongful

20   death beneficiaries" be granted.  The Court also will recommend that Plaintiffs be granted leave

21   to amend to remove any assertion or allegation that Plaintiff Mendoza Garcia brings this action

22   "on behalf of all wrongful death beneficiaries of Isaac Joseph Duran," and to clarify her standing

23   as the sole wrongful death beneficiary.

24         **B.    Joinder**

25         Defendants argue the reference in the complaint to unnamed wrongful death beneficiaries

26   presents an indispensable-party issue under Federal Rule of Civil Procedure 12(b)(7), and the

27   failure to join an indispensable party under Federal Rule of Civil Procedure 19 is a basis for

28   dismissal.  (Doc. 5 at 13.)

Rule 12(b)(7) authorizes the Court to dismiss an action if a plaintiff has failed "to join a party under Rule 19." *Solares v. Diaz*, No. 1:20-cv-00323 JLT BAM, 2023 WL 3724814, at *4 (E.D. Cal. May 30, 2023). Rule 19 provides that a person "must be joined as a party" if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest elating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    (i) as a practical matter impair or impede the person's ability to protect the interest; or

    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If the required person cannot be joined, then "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

Plaintiff Mendoza Garcia has represented that she is Decedent's sole wrongful death beneficiary. Thus, with the exception of Plaintiff Mendoza Garcia, there are no other apparent wrongful death beneficiaries to be named or joined in this action. Further, leave to amend will be granted for Plaintiff Mendoza Garcia to clarify her standing as the sole wrongful death beneficiary. The Court will therefore recommend that Defendants' motion to dismiss under Rule 12(b)(7) be denied as moot.

### C.  Failure to Protect and Failure to Provide Medical Care

Defendants argue that Plaintiffs fail to allege an Eighth Amendment claim for failure to protect, (Doc. 5 at 14-16), and fail to allege an Eighth Amendment claim for failure to provide medical care, (*id.* at 16-17.) Plaintiffs counter that they have stated an Eighth Amendment cause of action for failure to protect in the first cause of action, (Doc. 9 at 12), and sufficiently plead an Eighth Amendment failure to provide medical care claim in the second cause of action, (*id.* at 16-18).

The Court finds that Plaintiffs' first two causes of action fail to adequately allege Eighth Amendment claims for failure to protect and failure to provide medical care. Plaintiffs' first two

7

1   causes of action are premised on a violation of the Fourteenth Amendment, not the Eighth

2   Amendment.[1]  (*See* Compl. at 7:24 and ¶ 35; 10:11 and ¶¶ 41, 43.)  In the context of a failure to

3   protect claim and a failure to provide medical care claim, the Fourteenth Amendment applies to

4   pretrial detainees, not convicted prisoners.  *See Johnson v. Allan*, No. 2:24-cv-00861-JDP (PC),

5   2024 WL 3471216, at *1 (E.D. Cal. July 18, 2024), report and recommendation adopted, No.

6   2:24-CV-00861-DJC-JDP (PC), 2024 WL 4495444 (E.D. Cal. Oct. 15, 2024) (explaining that

7   failure to protect and inadequate medical care claims under Fourteenth Amendment apply only to

8   pretrial detainees, and not convicted prisoners); *see also Sandoval v. County of San Diego*, 985

9   F.3d 657, 667 (9th Cir. 2021) (explaining that for inmates serving custodial sentences following a

10  criminal conviction, the right to adequate medical treatment is part of the Eighth Amendment's

11  guarantee against cruel and unusual punishment;  however the right to adequate medical treatment

12  for pretrial detainees not yet convicted of crime arise under the Fourteenth Amendment's Due

13  Process Clause); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016)

14  ("Inmates who sue prison officials for injuries suffered while in custody may do so under the

15  Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the

16  Fourteenth Amendment's Due Process Clause.").  There are no allegations in the complaint to

17  suggest that Decedent, who was incarcerated at Kern Valley State Prison, was a pretrial detainee.

18  (*See* Compl. ¶¶ 1, 10.)  Plaintiffs therefore cannot maintain claims for failure to protect and

19  failure to provide medical care under the Fourteenth Amendment.  Accordingly, the Court will

20  recommend that Defendants' motion to dismiss the first and second causes action, to the extent

21  they are brought under the Fourteenth Amendment, be granted.  The Court also will recommend

22  _____

23  [1] Plaintiffs' second cause of action also alleges a violation of Decedent's right to be free from
    deliberate indifference to serious medical and mental health needs as "protected by the Fourth and
    Fourteenth Amendments" and "guaranteed by the Fourth and/or Fourteenth Amendments."

24  (Compl. ¶ 41.)  However, any claim for failure to provide medical care arises under the Eighth
    Amendment, not the Fourth Amendment.  *Sandoval v. County of San Diego*, 985 F.3d 657, 667

25  (9th Cir. 2021) ("For inmates serving custodial sentences following a criminal conviction, [the
    right to adequate medical treatment] is part of the Eighth Amendment's guarantee against cruel

26  and unusual punishment.").  Although Defendants suggest that reference to the Fourth
    Amendment should be a reference to the Eighth Amendment (Doc. 5 at 16 n. 2), the Court does

27  not so find as Plaintiff's complaint includes a sixth cause of action alleging failure to provide
    medical care arising under the Eighth Amendment.  (*See* Compl. at 18;15-17 and ¶ 77.)

28

1  denying leave to amend Plaintiffs' Fourteenth Amendment claims for failure to protect or failure

2  to provide medical care as Plaintiffs appear incapable of alleging that Decedent was a pretrial

3  detainee at the time of the events alleged in the complaint.

4      Plaintiffs also forward a sixth cause of action arising under the Eighth Amendment.

5  (Compl. ¶¶ 76-88.)  Plaintiffs allege their sixth cause of action sufficiently pleads failure to

6  provide medical care under the Eighth Amendment.  (Doc. 9 at 16-19.)

7      A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in

8  violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate

9  indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)

10  (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate

11  indifference requires Plaintiffs to show (1) "a 'serious medical need' by demonstrating that failure

12  to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

13  wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

14  indifferent."  *Jett*, 439 F.3d at 1096.

15      A defendant does not act in a deliberately indifferent manner unless the defendant "knows

16  of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825,

17  837 (1994).  "Deliberate indifference is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1051,

18  1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a

19  prisoner's pain or possible medical need" and the indifference caused harm, *Jett*, 439 F.3d at

20  1096.  In applying this standard, the Ninth Circuit has held that before it can be said that a

21  prisoner's civil rights have been abridged, "the indifference to his medical needs must be

22  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

23  cause of action."  *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*,

24  429 U.S. at 105–06).  Even gross negligence is insufficient to establish deliberate indifference to

25  serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

26      In the sixth cause of action, Plaintiffs generally allege that Defendants "deprived

27  DECEDENT of the right to be free from cruel and unusual punishment which was ongoing and

28  led to DECEDENT's death, as secured by the Eighth Amendment … by subjecting him, or

1    through their deliberate indifference, allowing others to subject him, to delay and denial of access

2    to medical or mental health care for a serious, but treatable, medical or mental health condition . .

3    . .” (Compl. ¶ 77.)  Plaintiffs additionally allege Defendants “knew or must have known that

4    DECEDENT's medical condition and medical, including psychiatric, needs were serious, but

5    treatable, and knew or must have known that he required access and delivery to urgently needed

6    medical/mental health care….” (*Id.* ¶ 78.)  Plaintiffs further allege that as a result of Defendants'

7    “deliberate indifference to both DECEDENT's need for medical care and treatment and his

8    mental condition, and as a result of Defendants' reckless disregard for DECEDENT's physical

9    safety and well-being, Plaintiffs suffered damages and deprivation of constitutional rights.” (*Id.* ¶

10    80.)  Plaintiffs claim that Defendants deprived Plaintiffs and Decedent of the “right to be free

11    from deliberate indifference to DECEDENT's serious medical needs while in custody and

12    confined in prison as an inmate, as secured by the Eighth and Fourteenth Amendments.” (*Id.* ¶

13    81.a.)

14        Plaintiffs' allegations are not sufficient to state a cognizable claim for deliberate

15    indifference to serious medical needs in violation of the Eighth Amendment.  First, Plaintiffs'

16    allegations are conclusory, lacking facts identifying a specific medical need.  Second, and

17    critically, Plaintiffs do not adequately allege that Defendants knew of and disregarded an

18    excessive risk to Decedent's medical condition or mental health.  “If a prison official should have

19    been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

20    matter how severe the risk.” *Toguchi*, 391 F.3d at 1057 (citing *Gibson v. County of Washoe,*

21    *Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002)) (internal quotations omitted); *Farmer*, 511 U.S. at

22    839 (reasoning that deliberate indifference analysis must focus on “what a defendant's mental

23    attitude actually was”). Plaintiffs allege that Defendants knew or must have known that

24    Decedent's medical condition and medical needs were serious, and knew or must have known

25    that Decedent required access and delivery of medical/mental health care.  However, grouping all

26    Defendants together does not adequately allege what each individual knew. A “prisoner must set

27    forth specific facts as to each individual defendant's deliberate indifference.” *Leer v. Murphy*, 844

28    F.2d 628, 634 (9th Cir. 1988) (emphasis added). The allegations in the sixth cause of action are

10

1    conclusory without a factual basis.

2         To the extent Plaintiffs' Eighth Amendment claim for failure to provide medical care is

3    premised on the October 14, 2023 incident on the prison yard, the complaint also fails to state a

4    cognizable claim.  Deliberate indifference may be shown when prison officials deny, delay, or

5    intentionally interfere with medical treatment, or may be shown by the way in which prison

6    officials provide medical care.  *Jett*, 439 F.3d 1096; *see also Hutchinson v. United States*, 838

7    F.2d 390, 394 (9th Cir. 1988).  In this instance, the complaint lacks factual allegations

8    demonstrating that prison officials failed to provide medical care or were deliberately indifferent

9    to a serious medical need on October 14, 2023.  Plaintiffs allege only that Decedent was attacked

10   by two other inmates, "sustained multiple stab wounds and was transported to an outside medical

11   facility for higher level of care." (Comp. ¶ 21.)  Plaintiffs do not allege a denial, delay, or

12   interference with medical care on October 14, 2023, nor do they include any factual allegations

13   concerning the medical care provided to Decedent prior to his transport to an outside medical

14   facility.

15        Defendants additionally argue that Plaintiffs' sixth cause of action fails to allege any facts

16   to state a claim for violation of the Eighth Amendment.  (Doc. 5 at 17.)  In particular, Defendants

17   contend that the allegations "are phrased in a conclusory manner without any detail as to what

18   Defendants did to deprive decedent of his right to be free from cruel and unusual punishment."

19   (*Id.*)  The Court agrees.  Although Plaintiffs argue that they have pled sufficient facts

20   demonstrating deliberate indifference to Plaintiffs' safety when he was allowed to enter the yard

21   and interact with the general population, Plaintiffs' allegations are alleged in a conclusory

22   manner.

23        For these reasons, the Court will recommend that Defendants' motion to dismiss the sixth

24   cause of action for violation of the Eighth Amendment be granted with leave to amend.

25        **D**.    **Loss of familial relations under the Fourteenth Amendment**

26        Plaintiffs assert a claim for deprivation of the right to a familial relationship with

27   Decedent against Defendants CDCR, Pfeiffer, Allison, Macomber, and DOES 1 -50.  (Compl. ¶¶

28   49-59.)  Plaintiffs allege that these defendants were "deliberately indifferent to DECEDENT's

11

1    protection, safety, and serious medical and mental health needs, … and their failure to train,

2    supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused

3    the untimely and wrongful death of DECEDENT deprived Plaintiff GARCIA of her liberty

4    interest in the parent-child relationship." (Compl. ¶ 49.) Plaintiffs further allege that "the

5    training policies of the CDCR … were inadequate to train its officers . . . to handle the usual and

6    recurring situations with which they must deal with, including but not limited to encounters with

7    individual who are violently and/or gravely attacked by others who are incarcerated" and that

8    Defendants "knew that their failure to adequately train CDCR officers, medical and mental health

9    staff, including other agents and employees, to ensure that those in general population are not

10    allowed the opportunity to obtain access to person incarcerated required to be segregated made it

11    highly predictable that its custody, medical and mental health staff would engage in conduct that

12    would deprive persons such as DECEDENT, and thus Plaintiff GARCIA, her rights." (*Id.* ¶ 52.)

13    Plaintiffs assert that Defendants "were thus deliberately indifferent to the obvious consequences

14    of their failure to train their deputies, agents and employees adequately." (Id.)

15         The Ninth Circuit has recognized that parents have a constitutionally protected liberty

16    interest in the companionship and society of their children. *Wheeler v. City of Santa Clara*, 894

17    F.3d 1046, 1057 (9th Cir. 2018); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir.

18    2014); *Porter v. Osborn*, 546 F.3d a1131, 1136 (9th Cir. 2008). "Parents and children may assert

19    Fourteenth Amendment substantive due process claims if they are deprived of their liberty

20    interest in the companionship and society of their child or parent through official conduct."

21    *Lemire v. Cal. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[T]he substantive

22    component of the Due Process Clause is violated by executive action only when it 'can properly

23    be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County of*

24    *Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *see also Porter*, 546 F.3d at 1137 ("only official

25    conduct that 'shocks the conscience' is cognizable as a due process violation."). "[O]nly the most

26    egregious official conduct can be said to be arbitrary in a constitutional sense." *Brittain v.*

27    *Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (quoting *Lewis*, 523 U.S. at 846). A prison official's

28    deliberately indifferent conduct will generally 'shock the conscience'" if "the prison official had

1    time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire*, 726

2    F.3d at 1075.

3         Defendants argue that Plaintiffs have not alleged facts sufficient to state a loss of familial

4    relations claim.  (Doc. 5 at 17.)  Specifically, Defendants contend that "Plaintiffs fail to describe

5    how Defendants were 'deliberately indifferent to DECEDENT's protection, safety, and serious

6    medical and mental health needs,' violated decedent's constitutional rights, or engaged in any

7    other conduct that shocks the conscience." (Id. at 18, citing Compl. 12:3-5.)

8         Plaintiffs counter that they have stated a cause of action for deprivation of the right to

9    familial relationship with Decedent.  Plaintiffs contend that Defendants were aware of facts that

10   Decedent had a mental disability and that he needed to be segregated from the general population

11   to avoid substantial risk to Decedent's safety.  (Doc. 9 at 20 [citing Compl. ¶¶ 22, 23, 49, 52].)

12   Plaintiffs further contend that the risk to Decedent was obvious, and Defendants knew that

13   placing Decedent in the yard with the general population posed a serious and obvious risk of

14   harm to Decedent.  (*Id*.)  Plaintiffs therefore assert that it is reasonable to infer that Defendants

15   "had time to deliberate before allowing Decedent to enter the yard with the general population."

16   (*Id*.)

17        Contrary to Plaintiffs' assertions, there are no factual allegations that Defendants—

18   particularly Defendants Allison, Macomber, and Pfeiffer—knew of Decedent's specific mental

19   health needs, knew that Decedent would be entering the general population, knew of any

20   particular risk of harm to Decedent's safety and protection posed by Decedent's entering the yard

21   with the general population as a result of his mental disability, or even knew of, and had time to

22   deliberate, before Decedent entered the yard on October 14, 2023. Conclusory allegations that

23   Defendants were on notice and had time to deliberate before acting or failing to act are not

24   sufficient.

25        Plaintiffs' claim for loss of familial relations against Defendants also appears to be based,

26   in part, on allegations that Defendants failed at the policy level, and that those failures caused the

27   deprivation of the constitutional rights of Plaintiff Mendoza Garcia and Decedent.  However,

28   Plaintiffs do not identify specific conduct that "shocks the conscience," and instead allege only

13

1    that the policies and training were "inadequate."  (*See*, *e.g.*, Compl. ¶ 52.)

2              For these reasons, the Court will recommend that Defendants' motion to dismiss the third

3    cause of action for deprivation of the right to familial relationship with Decedent under the

4    Fourteenth Amendment be granted with leave to amend.

5              **E.  Supervisory Liability**

6              Defendants contend that Plaintiffs fail to adequately allege supervisory claims based on a

7    failure to train, supervise, and discipline.  Specifically, Defendants assert that Plaintiffs purport to

8    hold Defendants Pfeiffer, Allison, and Macomber liable "under a theory of supervisory liability

9    for failure to properly train, supervise, and discipline others," but Plaintiffs' allegations do not

10   differentiate between the three Defendants, and "do not state facts showing Defendants were

11   responsible for training correctional staff or that they were aware of the staffs' training status."

12   (Doc 5 at 18.)  Further, Defendants contend that Plaintiffs' allegations lack any indication that the

13   supervisory defendants had anything to do with the alleged training or policies, or how such

14   matters caused harm to Decedent.  Defendants also contend that the complaint does not allege any

15   facts to suggest that Defendants Pfeiffer, Allison, and Macomber "were aware of training or

16   policy deficiencies, or that their respective subordinates were committing constitutional violations

17   which were caused due to training or policies."  (*Id.* at 19-20.)

18             Plaintiffs counter that Defendant Pfeiffer, as Warden of KVSP, was responsible for the

19   promulgation of the policies and procedures and allowance of the practices/customs committed

20   by employees of KVSP, and was responsible for the supervision, training, and hiring of persons at

21   KVSP.  Plaintiffs assert that Defendant Pfeiffer failed to take corrective action, discipline, or

22   remove the command staff at KVSP who permitted inmates that should be segregated to gain

23   access to restricted areas of the yard reserved for the general population.  Instead, Defendant

24   Pfeiffer allegedly ratified their actions and practices.  Defendant Pfeiffer also allegedly failed to

25   ensure that Decedent was segregated from the general population.  (Doc. 9 at 21.)

26             Similarly, Plaintiffs contend that Defendant Allison, the former Secretary of CDCR during

27   Decedent's incarceration at KVSP, and Defendant Macomber, the present Secretary of CDCR,

28   were responsible for the promulgation of the policies and procedures and allowance of the

1   practices/customs committed by employees of CDCR, and were responsible for the supervision,

2   training, and hiring of persons at CDCR.  Further, Plaintiffs allege that Defendants Allison and

3   Macomber knew that employees routinely permitted those that should be segregated to access

4   areas designated for the general population, and Defendant Allison and Macomber failed to

5   ensure that Decedent was segregated from the general population.  Plaintiffs additionally allege

6   that Defendants failed to properly train and supervise staff regarding policies, procedures and

7   protection of inmates who suffer from a mental disability and instead ratified their actions.  (*Id.*)

8          Supervisory Liability

9          Liability may not be imposed on supervisory personnel for the actions or omissions of

10  their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons

11  v. Navajo County., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588

12  F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

13  Supervisors may be held liable only if they "participated in or directed the violations, or knew of

14  the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

15  1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567

16  F.3d 554, 570 (9th Cir. 2009).  "The requisite causal connection may be established when an

17  official sets in motion a 'series of acts by others which the actor knows or reasonably should

18  know would cause others to inflict' constitutional harms."  *Corales*, 567 F.3d at 570.

19         Supervisory liability may also exist without any personal participation if the official

20  implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

21  rights and is the moving force of the constitutional violation."  *Redman v. County of San Diego*,

22  942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other

23  grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).  When a defendant holds a supervisory

24  position, the causal link between such defendant and the claimed constitutional violation must be

25  specifically alleged.  *See Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*,

26  589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement

27  of supervisory personnel in civil rights violations are not sufficient.  *See Ivey v. Board of Regents*,

28  673 F.2d 266, 268 (9th Cir. 1982).

1    Plaintiffs' allegations are not sufficient to state a claim for supervisory liability.

2    Plaintiffs' complaint does not include any factual allegations demonstrating or suggesting that

3    Defendants Pfeiffer, Allison, and Macomber participated in or directed the violations involving

4    Decedent, or knew of the alleged violations and failed to act to prevent them.  Plaintiffs allege

5    that each of the supervising Defendants "either directed his or her subordinates in conduct that

6    violated DECEDENT's rights, or set in motion a series of acts and omissions by his or her

7    subordinates that the supervisor knew or reasonably should have known would deprive

8    DECEDENT of rights, or knew his or her subordinates were engaging in acts likely to deprive

9    DECEDENT of rights and failed to act to prevent his or her subordinate from engaging in such

10   conduct." (Compl. ¶ 63.)  However, in order to state a cognizable claim, Plaintiffs may not

11   merely recite the elements of that claim.  *See Twombly*, 550 U.S. at 555.

12   Although Plaintiffs generally allege that these defendants failed to ensure that Decedent,

13   who had previously been diagnosed as being bipolar with schizophrenic tendencies, was

14   segregated from the general population (Compl. ¶ 34), there are no specific factual allegations

15   demonstrating that any of these defendants knew of Decedent's diagnoses, knew that he was not

16   being segregated from the general population, or knew that he was at risk of harm.  Additionally,

17   Plaintiffs' allegation that Defendants Pfeiffer, Allison, and Macomber knew that employees

18   routinely permitted those that should be segregated from general population to access areas

19   designated for the general population at KVSP is, at best, conclusory.  (Compl. ¶ 28.)  Plaintiffs

20   have not explained how Defendants would have such knowledge based on a single incident.

21   Additionally, Plaintiffs have not alleged that Defendants have promulgated or

22   implemented a specific policy "so deficient that the policy itself is a repudiation of the

23   constitutional rights and is the moving force of the constitutional violation."  *Redman*, 942 F.2d at

24   1446.  There are no factual allegations in the complaint suggesting that Defendants promulgated

25   or implemented a specific policy to permit inmates that should be segregated from the general

26   population to access areas designated for the general population at KVSP, nor are there factual

27   allegations identifying a specific policy alleged to be deficient related to the provision of

28   emergency care or adequate medical and mental health care.  Plaintiffs' conclusory allegations,

16

1    without more, are not sufficient.

2            Failure to Train/Supervise

3            A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's

4    liability under § 1983 in only limited circumstances, such as where the failure amounts to

5    deliberate indifference. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–90 (1989); *see*

6    *also Fuentes v. Montgomery*, No. 20-cv-1942-LAB (RBM), 2020 WL 7059530, at *3 (S.D. Cal.

7    Dec. 2, 2020) ("In order to state a § 1983 claim based on a failure to train, Plaintiff must allege

8    Warden Montgomery 'was deliberately indifferent to the need to train subordinates, and the lack

9    of training actually caused the constitutional harm or deprivation of rights.'") (citation omitted).

10   To establish a failure-to-train/supervise claim, a plaintiff must show that "'in light of the duties

11   assigned to specific officers or employees, the need for more or different training [or supervision]

12   [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the

13   policy-makers ... can reasonably be said to have been deliberately indifferent to the need.'"

14   *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390).  The

15   Ninth Circuit has applied the same failure to train standards to failure to supervise claims.  *Davis*

16   *v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) ("*Canton* dealt specifically with

17   inadequate training. We see no principled reason to apply a different standard to inadequate

18   supervision.").

19           Ordinarily, a single constitutional violation by an untrained employee is insufficient to

20   demonstrate deliberate indifference for purposes of failure to train or supervise. *See Connick v.*

21   *Thompson*, 563 U.S. 51, 62 (2011); *see also Fuentes*, 2020 WL 7059530, at *3 (explaining that

22   isolated incidents are insufficient to allege that warden was put on "notice that a course of

23   training is deficient in a particular respect" and that "the absence of such a course will cause

24   violations of constitutional rights"); *Delgado v. Lizarraga*, No. 2:19-CV-1540 KJN P, 2019 WL

25   11729808, at *3 (E.D. Cal. Aug. 22, 2019) (finding complaint failed to state a cognizable claim

26   based upon a theory of failure to train or supervise where plaintiff's "factual allegations identify

27   an isolated incident . . ., not a pattern of constitutional violations").

28           Here, Plaintiffs' complaint fails to state a cognizable claim based upon a theory of failure

1   to train/supervise.  The complaint lacks factual allegations to plausibly suggest that Defendants

2   were on notice of specific training or policy deficiencies, or that their subordinates were

3   committing constitutional violations which were caused due to specific training or policy

4   deficiencies.   "Without notice that a course of training is deficient in a particular respect,

5   decisionmakers can hardly be said to have deliberately chosen a training program that will cause

6   violations of constitutional rights."  *Connick*, 563 U.S. at 62.

7           Plaintiffs' general allegations regarding training and policy deficiencies, and Defendants'

8   alleged failure to correct their policies, procedures and practices despite having notice of

9   significant and danger problems, are conclusory.  Plaintiffs' complaint does not allege a pattern of

10  similar constitutional violations by untrained or unsupervised employees sufficient to state a

11  claim for failure to train or supervise.  Plaintiffs generally allege that before Decedent's death,

12  Defendants "knew that there existed a great indifference to the safety and protection of the

13  inmates who were in the government's custody within the California Department of Corrections

14  and Rehabilitation correctional facilities, including Kern Valley State Prison."  (Compl. ¶ 3.)

15  Plaintiffs also generally allege that Defendants were "put on notice of the great dangers which

16  existed . . . through the long history of deaths of those incarcerated; the inmate-on-inmate

17  violence which permeated Kern Valley State Prison; medical and mental health staff's failures

18  amount to constitutional violations; and a general lackadaisical attitude towards Defendants'

19  obligations under the Eighth and Fourteenth Amendments."  (Compl. ¶ 4.)  However, these

20  conclusory statements lack factual allegations identifying a pattern of constitutional violations.

21  Plaintiffs' complaint includes factual allegations describing only a single, specific incident, which

22  is not sufficient to allege that Defendants were put on notice that a course of training (or

23  supervision) was deficient in a particular respect.

24          Failure to Discipline/Ratification

25          Plaintiffs also argue that they have stated a claim based, in part, on allegations that

26  Defendant Pfeiffer "failed to take corrective action, discipline, or remove the command staff at

27  KVSP who permitted those inmates that should be segregated to gain access to restricted areas of

28  yard reserved for the general population" and instead "ratified their actions and the practices."

18

1    (ECF No. 9, at 21, citing Compl. ¶¶ 29, 65)   Plaintiffs' allegations appear to be premised on a

2    theory of ratification.  (*See* Compl. ¶ 65 (alleging Defendants' ratification of conduct and failure

3    to discipline culpable law enforcement officers and employees).)  However, "[a] single decision

4    by a supervisor not to reprimand a subordinate officer, without more, is not sufficient to establish

5    the type of ratification that would lead to liability under § 1983." *Jackson v. Aviles*, No. 18CV60-

6    BAS (BLM), 2019 WL 2289393, at *8 (S.D. Cal. May 28, 2019), report and recommendation

7    adopted, No. 18-CV-0060-BAS-BLM, 2019 WL 3369712 (S.D. Cal. July 26, 2019); *see also*

8    *Johnson v. Warden*, No. 2:23-cv-0908-DC-JDP (P), 2025 WL 1400193, at *4 (E.D. Cal. May 14,

9    2025), report and recommendation adopted, No. 2:23-cv-0908-DC-JDP (PC), 2025 WL 2391487

10   (E.D. Cal. Aug. 18, 2025) ("To bring [ratification] claim, there must be "something more" than an

11   isolated failure to discipline or the fact that a policymaker concluded an officer acted within

12   applicable policies and procedures.").  Here, Plaintiffs allege only an isolated failure to discipline.

13         For the reasons stated, the Court will recommend that Defendants' motion to dismiss the

14   fourth cause of action for supervisory liability be granted with leave to amend.

15         **F.  Negligence – Wrongful Death**

16         Defendants allege that Plaintiffs' fifth cause of action for negligence-wrongful death fails

17   to state a claim.  Specifically, Defendants assert that Plaintiffs have not alleged each Defendants'

18   personal involvement, and as supervisors, Defendants Macomber, Allison, and Pfeiffer cannot be

19   held liable for the acts of others under California Government Code § 820.8.  (Doc. 5 at 20.)

20         "The elements of the cause of action for wrongful death are the tort (negligence or other

21   wrongful act), the resulting death, and the damages, consisting of the *pecuniary* loss suffered by

22   the *heirs*." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263-64 (2006) (emphasis in

23   original). The elements of the tort of negligence are "a legal duty to use due care, a breach of such

24   legal duty, and the breach as the proximate or legal cause of the resulting injury." *Vasilenko v.*

25   *Grace Family Church*, 3 Cal. 5th 1077, 1083 (2017).

26         Section 820.8 states: "Except as otherwise provided by statute, a public employee is not

27   liable for an injury caused by the act or omission of another person.  Nothing in this section

28   exonerates a public employee from liability for injury proximately caused by his own negligent or

1    wrongful act or omission." Cal. Gov't Code § 820.8.  "In essence, the provision prevents public

2    officers from being held vicariously liable for the torts of their subordinates. *Graves v. California*

3    *Dep't of Corr. & Rehab.,* No. EDCV 17-1086 JGB (SPx), 2019 WL 8168060, at *10 (C.D. Cal.

4    Nov. 14, 2019).

5         Here, Plaintiffs have apparently conceded Defendants Allison, Macomber, and Pfeiffer are

6    not vicariously liable for the actions of their subordinates.  (Doc. 9 at 23 ("Defendants' citation to

7    California Government Code § 820.8 is inapplicable because Plaintiffs do not assert liability

8    based on a theory of "respondeat superior," as to Defendants PFEIFFER, ALLISON, or

9    MACOMBER.").)  Instead, Plaintiffs' claims are premised on an assertion that "each Defendant

10   is liable for their own tortious acts, such as failing to supervise and/or train, and failing to enact

11   appropriate standards and policies."  (*Id.* at 23.)

12        "Section 820.8 has been held to be inapplicable to claims against a supervisor for his own

13   improper or negligent supervision and training."  *Solares v. Allison*, No. 1:20-cv-00323-NONE-

14   BAM, 2022 WL 102216, at * 4 (E.D. Cal. Jan. 11, 2022) (quotation and citation omitted;

15   collecting cases).  Even if the Court were to accept that § 820.8 is inapplicable in the context of a

16   negligence-wrongful death claim, Plaintiffs have not adequately alleged claims against

17   Defendants premised on the failure to train or supervise, or failing to enact appropriate standards

18   and policies.  Accordingly, the Court will recommend that this claim be dismissed with leave to

19   amend.  However, based on the recommendation for dismissal, the Court finds it unnecessary to

20   address Defendants' argument that punitive damages and attorneys' fees are unavailable on the

21   wrongful-death claim.  (Doc. 5 at 28.)

22        **G.  ADA and Rehabilitation Act ("RA")**

23        Defendants first contend that Plaintiffs' seventh cause of action for violation of the ADA

24   and RA should be dismissed because it is impermissibly brought against Defendants Macomber,

25   Allison, and Pfeiffer in their individual capacities.  (Doc. 5 at 21.)

26        Title II of the ADA provides, "no qualified individual with a disability shall, by reason of

27   such disability, be excluded from participation in or be denied the benefits of the services,

28   programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

20

U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  *Id.* § 12131(2).

While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted).

Plaintiffs cannot state a claim under the ADA or the RA against any defendant in their individual capacities.  *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act").  To state a claim under the ADA or RA, a plaintiff must bring a lawsuit against a public entity or against a person in their official capacity.  *Powell v. Albrecht*, No. 2:23-CV-0520 DAD AC P, 2025 WL 1735541, at *8 (E.D. Cal. June 23, 2025) (citing *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187 (9th Cir. 2003); *see also U.S. v. Georgia*, 546 U.S. 151, 153 (2006).  The Court will therefore recommend that Defendants' motion to dismiss Plaintiffs' seventh cause of action against Defendants Allison, Macomber, and Pfeiffer in their individual capacities be granted without leave to amend.

Defendants additionally argue that the complaint fails to state a claim for violation of the ADA or RA.  (Doc. 5 at 21.)  To that end, Defendants contend that Plaintiffs have not offered factual allegations to support their claim that Decedent had a medical disability, nor have they alleged how Decedent's disabilities substantially limited one or more major life activity.  (*Id.* at 22.)  Defendants also contend that Plaintiffs have failed to allege what services, programs or activities Decedent was excluded from participation in because of his disability, or that he was subject to discrimination by CDCR officials.  (*Id.*)

21

1    Plaintiffs counter that Decedent had bipolar disorder with schizophrenic tendencies and

2    that Defendants' failure to properly train and supervise staff on how to appropriately treat,

3    monitor, and interact with disabled persons violated his rights to equal treatment on the basis of

4    disability.  Additionally, Plaintiffs assert that, because Decedent is unable to participate in this

5    litigation, discovery is needed to support their claims.  (Doc. 9 at 24-25.)

6    In order to state a claim under Title II of the ADA, a plaintiff must allege four elements:

7    (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive

8    the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded

9    from participation in or denied the benefits of the public entity's services, programs, or activities,

10    or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of

11    benefits, or discrimination was by reason of [his] disability." *McGary v. City of Portland*, 386

12    F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting *Thompson v. Davis*, 295 F.3d

13    890, 895 (9th Cir. 2002)).

14    To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a

15    plaintiff must prove intentional discrimination on the part of the defendant. *Duvall v. County of*

16    *Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  Intentional discrimination can be shown by

17    deliberate indifference, which "requires both knowledge that a harm to a federally protected right

18    is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139 (citations omitted).

19    Plaintiffs have alleged that Decedent was a qualified individual with a mental disability,

20    and he had bipolar disorder with schizophrenic tendencies.  (Compl. ¶¶ 22, 90.)  However,

21    Plaintiffs have not alleged facts demonstrating Decedent was excluded from participation in, or

22    denied the benefits of, any particular service or program offered by the prison because of his

23    mental illness, or that he was subjected to any type of discrimination *by reason of* his disability.

24    Conclusory allegations, without factual support, are not sufficient.  (*See* Compl. ¶¶ 97-98.)

25    Further, Plaintiffs' allegations of inadequate or lack of medical care or mental health

26    treatment do not state a claim under the ADA or the RA. *Simmons*, 609 F.3d at 1022 (Inadequate

27    or negligent medical treatment alone does not constitute an unlawful failure to accommodate

28    under the ADA or the Rehabilitation Act); *Tandel v. County of Sacramento*, 2015 WL 1291377,

at *18 (E.D. Cal. Mar. 20, 2015) ("Inadequate treatment or lack of treatment for Plaintiff's medical condition does not in itself suffice to create liability under [the ADA or the Rehabilitation Act]."). Accordingly, the Court will recommend that Defendants' motion to dismiss Plaintiffs' seventh cause of action for failure to state a claim be granted with leave to amend.

As the Court is recommending that this claim be dismissed, it is unnecessary to reach Defendants' additional argument that Plaintiffs do not state a plausible claim for damages under the ADA or RA. (Doc. 5 at 23-24.) It also is unnecessary to address Defendants' request to strike Plaintiffs' demand for punitive damages as to these claims. (Doc. 5 at 28.) However, Plaintiffs are cautioned that punitive damages are not available for violations of the ADA or RA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002); *Mark H. v. Lemahieu*, 513 F.3d 922, 930 (9th Cir. 2008).

### H. Statutory Immunities

Defendants argue that they are statutorily immune from liability for Plaintiffs' state law claims for negligence, violation of the Bane Act (Civil Code § 52.1), and alleged violation of California Government Code § 845.6. (Doc. 5 at 24.)

#### 1. California Government Code § 845.2

Defendants argue that public employees cannot be held liable for the failure to provide sufficient equipment, personnel, or facilities within a penal institution, citing Government Code § 845.2. Section 845.2 provides that "neither a public entity nor a public employee is liable for a failure to provide a prison, jail or penal or correctional facility, or, if such facility is provided, for failure to provide sufficient equipment, personnel or facilities therein." Cal. Gov't Code § 845.2

Plaintiffs contend that this section is not applicable because they "do not allege that the harm to Decedent was the result of insufficient equipment or supplies." (Doc. 9 at 27.) Defendants reply that because of this confirmation by Plaintiffs, "it does not appear that Government Code section 845.2 has any application in this case." (Doc. 10 at 14.)

Based on Defendants' reply, the Court finds that § 845.2 is not applicable and does not bar Plaintiffs' state law claims. The Court will therefore recommend Defendants' motion to dismiss the state law claims on this basis be denied.

1                          **2.   California Government Code § 820.2**

2              Defendants argue they are immune from liability under California Government Code §

3    820.2, which states that "a public employee is not liable for an injury resulting from his act or

4    omission where the act or omission was the result of the exercise of the discretion vested in him,

5    whether or not such discretion be abused." Cal. Gov't Code § 820.2.  Defendants bear the burden

6    of establishing that they are entitled to immunity for an actual policy decision made by an

7    employee who "consciously balanc[ed] risks and advantages ...." *AE ex rel. Hernandez v. County

8    of Tulare,* 666 F.3d 631, 639 (9th Cir. 2012) (citation omitted); *Steinle v. City & Cnty. of S.F.*,

9    919 F.3d 1154, 1161 (9th Cir. 2019) (explaining that to be entitled to § 820.2 immunity, there

10   must be a showing that the specific conduct giving rise to the suit involved the actual exercise of

11   discretion); *Est. of Debbs v. County of Sacramento*, No. 2:20-cv-01153-TLN-DB, 2023 WL

12   4108320, at *7 (E.D. Cal. June 21, 2023).

13             Defendants assert that this immunity applies to basic policy decisions or activities at the

14   "planning" level, rather than those at the "operational level," citing *Taylor v. Buff*, 172 Cal. App.

15   3d 384, 390 (1985).  (Doc. 5 at 25.)  They further assert that Defendants Macomber, Allison, and

16   Pfeiffer engage in policy decisions or activities at the "planning" level, rather than at the

17   "operational" level.  (*Id.* at 26.)  However, Defendants admit that the allegations in the complaint

18   are phrased in a conclusory fashion without any detail as to how Defendants' violated Decedent's

19   rights.  (*Id.*)

20             Given the conclusory nature of the complaint, Defendants' generalized immunity

21   argument regarding policy decisions and activities is not sufficient.  Further, the Court agrees

22   with Plaintiffs that Defendants' immunity argument is premature at this stage in the pleadings.

23   (Doc. 9 at 27-28); s*ee M.M. v. San Juan Unified Sch. Dist.*, No. 2:19-cv-00398-TLN-EFB, 2020

24   WL 5702265, at *13 (E.D. Cal. Sept. 24, 2020) (agreeing that immunity argument premature at

25   motion to dismiss stage of pleadings); *Martinez v. County of Sonoma*, No. 15-cv-01953-JST,

26   2015 WL 5354071, at *10 (N.D. Cal. Sept. 14, 2015) ("[S]uch a claim of immunity can generally

27   not be resolved at a motion to dismiss." ).

28             Accordingly, the Court will recommend that Defendants' motion to dismiss based on §

                                                    24

1    820.2 immunity be denied without prejudice.

2        **I.    Section 1983 Claims against CDCR**

3        Defendants contend that Plaintiffs' section 1983 claims against CDCR should be

4    dismissed because CDCR is not a "person" within the meaning of § 1983 and the injunctive relief

5    exception to Eleventh Amendment immunity does not apply to a state or its agencies.  (Doc. 5 at

6    26.)  Plaintiffs counter that they should be permitted to advance their section 1983 claims against

7    CDCR premised on government liability based on a policy or custom, failure to provide adequate

8    training and supervision, and because of CDCR's implementation of certain policies that

9    amounted to deliberate indifference to Decedent's safety and well-being.  (Doc. 9 at 29-30.)

10       The Supreme Court has determined that state agencies are not "persons" under § 1983.

11   *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990). CDCR therefore cannot be

12   held liable under § 1983.  *See Est. of Sumner v. California Dep't of Corr. & Rehab.*, No. 2:22-cv-

13   01638-JAM-DB, 2023 WL 3304233, at *2 (E.D. Cal. May 8, 2023) (noting Supreme Court has

14   determined that state agencies are not "persons" under § 1983.)

15       In addition, the "Eleventh Amendment bars suits for money damages in federal court

16   against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v.*

17   *Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed, the Eleventh Amendment

18   prohibits federal courts from hearing a section 1983 lawsuit in which damages or injunctive relief

19   is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by

20   the state or a valid congressional override. . . ."  *Dittman v. California*, 191 F.3d 1020, 1025 (9th

21   Cir. 1999).  "The Eleventh Amendment bars suits which seek either damages or injunctive relief

22   against a state, 'an arm of the state,' its instrumentalities, or its agencies."  *See Fireman's Fund*

23   *Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and

24   citations omitted), cert. denied, 538 U.S. 961 (2003).  "The State of California has not waived its

25   Eleventh Amendment immunity with respect to claims brought under § 1983 in federal

26   court. . . ."  *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S.

27   234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009)

28   (finding California Department of Corrections and California Board of Prison Terms entitled to

1    Eleventh Amendment immunity).  CDCR is a state agency entitled to Eleventh Amendment

2    immunity.

3         Based on the above, the Court will recommend Defendants' motion to dismiss Plaintiffs'

4    § 1983 claims against CDCR be granted without leave to amend.

5         **J.   California Government Code § 845.6.**

6         Defendants argue that Plaintiffs' ninth cause of action for violation of California

7    Government Code § 845.6 fails to state a claim.  (Doc. 5 at 27.)

8         Under California law, a public entity or its employee is not liable for injury caused by the

9    employee's failure to furnish or obtain medical care for a prisoner. Cal. Gov't Code § 845.6.

10   However, the public entity and its employee may be held liable if the employee is acting within

11   the scope of his employment and either knows or has reason to know that the prisoner needs

12   immediate medical care and fails to take reasonable action to summon such care. *Id.* "[S]ection

13   845.6 creates out of the general immunity a limited cause of action against a public entity for its

14   employees' failure to *summon* immediate medical care only .... The statute does not create

15   liability of the public entity for malpractice in furnishing or obtaining that medical care." *Vivanco*

16   *v. California Dep't of Corr. & Rehab.*, No. 1:17-cv-00434-BAM, 2019 WL 2764397, at *9 (E.D.

17   Cal. July 2, 2019), aff'd, 817 F. App'x 492 (9th Cir. 2020) (quoting *Castaneda v. Dep't of Corrs.*

18   *& Rehab.*, 212 Cal.App.4th 1051, 1070 (2013) (emphasis in original).

19        Plaintiffs' allegations generally concern the alleged failure to provide a certain level of

20   medical and psychiatric care, and do not concern a failure to summon immediate medical care.

21   Additionally, there are no factual allegations in the complaint demonstrating that Defendants

22   knew that Decedent had been stabbed on October 14, 2023, that Decedent needed immediate

23   medical care, and failed to take reasonable steps to summon medical care for Decedent.

24   Plaintiffs' complaint therefore fails to state a claim for violation of Government Code § 845.6.

25        Accordingly, the Court will recommend that Defendants' motion to dismiss Plaintiffs'

26   ninth cause of action for violation of Government Code § 845.6. action be granted.

27   ///

28   ///

1    **K.  Defendant Allison**

2          Defendants contend that Plaintiffs' claims against Defendant Allison should be dismissed

3    because she retired at the end of December 2022, more than nine months before Decedent was

4    attacked on the yard, and she was replaced by Defendant Macomber.[2]  (Doc. 5 at 29.)

5          Plaintiffs counter that she should not be dismissed because she allegedly was responsible

6    for the development and implementation of policies and procedures within the prison system and

7    allowed the continuation of the deficient practices that contributed to Decedent's death.  (Doc. 9

8    at 30.)  Plaintiffs also contend that Defendants' argument is premature, and they are "entitled to

9    conduct discovery to fully investigate Defendant ALLISON's involvement in the events leading

10   to the incident, including her role in the formulation and enforcement of policies that failed to

11   protect inmates like the Decedent."  (*Id.* at 31.)

12         Plaintiffs provide no authority to support the proposition that Defendant Allison should

13   remain in this case despite retiring at the end of December 2022, more than nine months prior to

14   the incident.  Nor do they explain how Defendant Allison could be responsible for the policies,

15   procedures, supervision, or training at KVSP or CDCR at the time of the incident.  Because

16   Defendant Allison retired months before the incident that led to Decedent's death, the Court will

17   recommend that the claims against Defendant Allison be dismissed without leave to amend.

18   **V.      Conclusion and Recommendation**

19         For the reasons stated, it is HEREBY RECOMMENDED that Defendants' motion to

20   dismiss Plaintiffs' complaint be GRANTED in part and DENIED in part as follows:

21         1.  Defendants' motion to dismiss based on Plaintiff Mendoza Garcia's lack of standing to

22

23   _____

     [2] Defendants request the Court take judicial notice of a December 12, 2022 article from CDCR's
     website regarding the retirement of Secretary Allison and the appointment of Jeff Macomber as
24   the next CDCR Secretary, effective December 28, 2022.  (Doc. 5-1, Ex. A.)  Plaintiffs do not
     object to the request.  Accordingly, the Court will take judicial notice of Secretary Allison's
25   retirement at the end of December 2022.  *See Vargas v. Wells Fargo Bank, N.A.*, No. C 12-02008
     WHA, 2012 WL 2931220, at *7 (N.D. Cal. July 18, 2012) (holding that the Court may take
26   judicial notice of "government websites" as documents "not subject to reasonable dispute"); *see
     also Cota v. Liberty Mut. Ins.*, No. 1:18-cv-00133-DAD-JLT, 2018 WL 1453209, at *2 (E.D. Cal.
27   Mar. 23, 2018) (same).

28
                                                      27

bring claims "on behalf of all wrongful death beneficiaries" be granted with leave to amend to remove any assertion or allegation that Plaintiff Mendoza Garcia brings this action "on behalf of all wrongful death beneficiaries of Isaac Joseph Duran," and to clarify her standing as the sole wrongful death beneficiary.

2.  Defendants' motion to dismiss under Rule 12(b)(7) be denied as moot.

3.  Defendants' motion to dismiss the first and second causes action, to the extent they are brought under the Fourteenth Amendment, be granted without leave to amend the Fourteenth Amendment claims for failure to protect or failure to provide medical care.

4.  Defendants' motion to dismiss the sixth cause of action for violation of the Eighth Amendment be granted with leave to amend.

5.  Defendants' motion to dismiss the third cause of action for deprivation of the right to familial relationship with Decedent under the Fourteenth Amendment be granted with leave to amend.

6.  Defendants' motion to dismiss the fourth cause of action for supervisory liability be granted with leave to amend.

7.  Defendants' motion to dismiss the fifth cause of action for negligence-wrongful death be granted with leave to amend.

8.  Defendants' motion to dismiss the seventh cause of action for violation of the ADA and Rehabilitation Act against Defendants Allison, Macomber, and Pfeiffer in their individual capacities be granted without leave to amend.

9.  Defendants' motion to dismiss Plaintiffs' seventh cause of action for violation of the ADA and Rehabilitation Act be granted with leave to amend.

10. Defendants' motion to dismiss the state law claims based on California Government Code §§ 845.2 and 820.2 be denied.

11. Defendants' motion to dismiss Plaintiffs' § 1983 claims against CDCR be granted without leave to amend.

12. Defendants' motion to dismiss Plaintiffs' ninth cause of action for violation of California Government Code § 845.6 be granted with leave to amend.

1        13. Defendants' motion to dismiss Defendant Allison from this action be granted without

2          leave to amend.

3        These Findings and Recommendations will be submitted to the United States District

4 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

5 **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

6 file written objections with the court.  The document should be captioned "Objections to

7 Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed**

8 **fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page**

9 **number if already in the record before the Court.  Any pages filed in excess of the 15-page**

10 **limit may not be considered.**  The parties are advised that failure to file objections within the

11 specified time may result in the waiver of the "right to challenge the magistrate's factual

12 findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter*

13 *v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

14 IT IS SO ORDERED.

15      Dated:  **September 2, 2025**          /s/ *Barbara A. McAuliffe*

16                                      UNITED STATES MAGISTRATE JUDGE