UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL MENDOZA GARCIA, | Case No.: 1:24-cv-01128-KES-CDB (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | (Doc. 22) |
| Defendants. | 14-Day Objection Period |

Plaintiff Rachel Mendoza Garcia proceeds by counsel in this civil rights action in which she asserts claims pursuant to 42 U.S.C. section 1983 and state law against Defendants California Department of Corrections and Rehabilitation (CDCR), Macomber, and Pfeiffer.

## I.       INTRODUCTION AND RELEVANT BACKGROUND

Plaintiff's claims arise from the death of Isaac Joseph Duran (Decedent[1]) while he was an inmate at Kern Valley State Prison (KVSP). Plaintiff, Decedent's mother, initiated this action both individually and on behalf of all wrongful death beneficiaries.

According to Plaintiff's allegations, on the afternoon of October 14, 2023, Decedent was stabbed by two inmates, sustained multiple wounds, and was transferred to the Kern Medical

---

[1] Although both parties state Decedent was 21 years old at the time of his death (*see* Doc. 19 at 4 & Doc. 22 at 10), the Certificate of Death, appended to the first amended complaint, reveals Decedent was born June 9, 1982, and was 41 years old at the time of his death. (*See* Doc. 19-2 at 3 [Exhibit 1].)

Center for a higher level of care. Decedent passed away on November 9, 2023.

Following removal from the Kern County Superior Court in September 2024, then Defendants Kathleen Allison, CDCR, Macomber, and Pfeiffer filed a motion to dismiss. (Doc. 5.) Following briefing, the then assigned magistrate judge recommended the motion be granted in part and denied in part. (Doc. 15.) More specifically, it was recommended that: (1) Defendants' motion to dismiss based on Plaintiff Mendoza Garcia's lack of standing to bring claims "on behalf of all wrongful death beneficiaries" be granted with leave to amend to remove any assertion or allegation that Plaintiff Mendoza Garcia brings this action "on behalf of all wrongful death beneficiaries of Isaac Joseph Duran," and to clarify her standing as the sole wrongful death beneficiary; (2) Defendants' motion to dismiss under Rule 12(b)(7) be denied as moot; (3) Defendants' motion to dismiss the first and second causes action, to the extent they are brought under the Fourteenth Amendment for failure to protect or failure to provide medical care, be granted without leave to amend; (4) Defendants' motion to dismiss the sixth cause of action for violation of the Eighth Amendment be granted with leave to amend; (5) Defendants' motion to dismiss the third cause of action for deprivation of the right to familial relationship with Decedent under the Fourteenth Amendment be granted with leave to amend; (6) Defendants' motion to dismiss the fourth cause of action for supervisory liability be granted with leave to amend; (7) Defendants' motion to dismiss the fifth cause of action for negligence-wrongful death be granted with leave to amend; (8) Defendants' motion to dismiss the seventh cause of action for violation of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) against Defendants Allison, Macomber, and Pfeiffer in their individual capacities be granted without leave to amend; (9) Defendants' motion to dismiss Plaintiffs' seventh cause of action for violation of the ADA/RA be granted with leave to amend; (10) Defendants' motion to dismiss the state law claims based on California Government Code §§ 845.2 and 820.2 be denied; (11) Defendants' motion to dismiss Plaintiffs' § 1983 claims against CDCR be granted without leave to amend; (12) Defendants' motion to dismiss Plaintiffs' ninth cause of action for violation of California Government Code § 845.6 be granted with leave to amend; and (13) Defendants' motion to dismiss Defendant Allison from this action be granted without leave to amend. (*Id*. at 27-29.) On

2

October 27, 2025, District Judge Kirk E. Sherriff issued his Order Adopting Findings and Recommendations. (Doc. 18.)

On November 17, 2025, Plaintiff filed a first amended complaint. (Doc. 19.)

On December 19, 2025, Defendants CDCR, Macomber, and Pfeiffer filed a motion to dismiss the first amended complaint. (Doc. 22.) Plaintiff opposed (Doc. 24) and Defendants replied (Doc. 25).

On January 28, 2026, this matter was reassigned from Magistrate Judge Barbara A. McAuliffe to the undersigned. (Doc. 27.)

## II.    APPLICABLE LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). Dismissal is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

The Court must accept as true the allegations of the complaint in question. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It must also construe the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (a court "accept[s] as true all well-pleaded allegations of

3

material fact, and construe[s] them in the light most favorable to the non-moving party").

If a complaint fails to state a plausible claim, the Court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citation & quotation marks omitted).

### III.     SUMMARY OF THE PARTIES' BRIEFING

#### *Defendants' Motion to Dismiss the First Amended Complaint (Doc. 22)*

Defendants move to dismiss Plaintiff's first amended complaint for a failure to state a claim upon which relief can be granted. More specifically, Defendants contend Plaintiff fails to state a claim for a failure to protect, denial of medical care or a violation of Decedent's right to be free from cruel and unusual punishment, deprivation of the right to familial relationship, supervisory liability, negligence – wrongful death, cruel and unusual punishment, a violation of the Bane Act, a Government Code section 845.6 violation, violations of the ADA/RA, or a survival claim, that statutory immunities bar Plaintiff's state law discretionary acts and conduct of others claims, and that CDCR is immune from liability for state law claims. Further, Defendants assert some of the punitive damages claims (wrongful death, ADA/RA) and attorney fees tied to state law claims, excepting the Bane Act claim, should be dismissed. Finally, Defendants maintain the Court should dismiss all claims against Defendants CDCR, Macomber, and Pfeiffer without granting leave to amend as Plaintiff continues to set forth only vague and generalized conclusions that fail to state a claim.

#### *Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc. 24)*

Plaintiff argues she has properly pled the causes of action brought pursuant to the Eighth Amendment (first, second, and sixth causes of action), the deprivation of the right to familial relationship with Decedent (third cause of action), supervisory liability (fourth cause of action), negligence – wrongful death (fifth cause of action), the Bane Act (seventh cause of action), California Government Code § 845.6 (eighth cause of action), ADA/RA (ninth cause of action), California Code of Civil Procedure § 377.60 (tenth cause of action), and contends that none of the immunities asserted by Defendants defeat the state law causes of action at the pleading stage and

that the requests for punitive damages and attorney fees are proper. Plaintiff asks the Court to deny Defendants' motion to dismiss, or, alternatively, to grant Plaintiff leave to amend the complaint to cure any deficiencies.

### *Defendants' Reply to Plaintiff's Opposition (Doc. 25)*

Defendants argue Plaintiff's first amended complaint and opposition to their motion to dismiss "lack any factual allegation as to each or any of the Defendants." Thus, Defendants maintain, because Plaintiff has "once again" failed to state a claim and because they are entitled to certain immunities, the motion to dismiss should be granted without leave to amend as Plaintiff cannot "show that she could sufficiently amend her complaint if leave to amend was granted yet again."

### IV.    THE FIRST AMENDED COMPLAINT

Initially, the Court notes that the first amended complaint identifies Plaintiff Rachel Mendoza Garcia as "the natural mother of" Decedent and states she is suing "as the wrongful death beneficiary and as successor-in-interest …" (Doc. 19 at 4.) Because the operative complaint no longer asserts Plaintiff is also suing "on Behalf of All Wrongful Death Beneficiaries of Isaac Joseph Duran, Deceased," the undersigned will direct the Clerk of the Court to remove that language from the docket for this action. Additionally, the undersigned will direct the Clerk to remove Kathleen Allison from the docket for this action pursuant to the presiding district judge's order of October 27, 2025, dismissing Allison as a defendant. (*See* Doc. 18.)

### *The Common Allegations*

On or about October 14, 2023, at approximately 2:55 p.m., while incarcerated at KVSP, Decedent was attacked by two other inmates, Roland C. Corona and Luis Alvidrez, who used inmate-manufactured weapons. Decedent sustained multiple stab wounds and was transported to an outside medical facility for a higher level of care. On or about November 9, 2023, at approximately 9:14 p.m., Decedent was pronounced deceased while under the care of medical staff at Kern Medical Center in Bakersfield. (Doc. 19 at 8, ¶ 24.) Corona and Alvidrez had previously manufactured deadly weapons while incarcerated "and had additional sentencing for the manufacture of a deadly weapon by a prisoner. " (*Id.*, ¶ 25.)

5

Defendants had actual knowledge that Decedent suffered from a serious medical need, having been diagnosed with bipolar disorder and schizophrenic tendencies, requiring psychiatric medications which they denied and/or delayed, failed to provide adequate treatment which they knew would result in further significant injury, failed to provide adequate mental health counseling, inpatient care, and ignored the risks associated with Decedent's care and treatment, which should have also included isolating him from the general population to keep him safe from harm, causing unnecessary and wanton infliction of pain, and ultimately death. (Doc. 19 at 8, ¶ 26.) Prior to his death, Decedent suffered from bipolar disorder with schizophrenic tendencies. Due to his mental disability, Decedent was often medicated and was supposed to be kept in a segregation unit. Decedent was not supposed to be permitted, and/or should not have been permitted, to be with or around KVSP's general population of the prison due to his mental disability. However, on October 14, 2023, Decedent was permitted by CDCR's correctional officers to enter a restricted area (e.g., the yard) which resulted in Decedent being stabbed approximately 17 times. (*Id.*, ¶ 27.)

Plaintiff asserts CDCR's correctional officers knew and/or had reason to know that Decedent was not permitted to enter the yard with the general population due to his mental disability. Plaintiff contends that Defendants were deliberately indifferent to Decedent's serious and immediate mental and physical health needs, mental illness, and physical pain, that Defendants failed to properly monitor Decedent to ensure that he was not allowed access to the general population areas within the KVSP, and that Defendants failed to timely step in and aid Decedent, allowing him to be stabbed multiple times. (Doc. 19 at 9, ¶ 27.)

### *The Claims for Relief*

Plaintiff asserts the following claims for relief: (1) Eighth Amendment failure to protect against Defendants Macomber, Pfeiffer and Does 1 through 50; (2) Eighth Amendment failure to provide medical care against Defendants Macomber, Pfeiffer and Does 1 through 50; (3) Eighth Amendment deprivation of right to familial relationship against Defendants Macomber, Pfeiffer, and Does 1 through 50; (4) supervisory liability causing constitutional violations for failure to properly train, supervise, and discipline against Defendant Macomber, Pfeiffer, and Does 1

6

through 50; (5) negligence – wrongful death pursuant to California Code of Civil Procedure § 377.60 against all Defendants and Does 1 through 50; (6) an Eighth Amendment violation of the right to be free from cruel and unusual punishment against Defendants Macomber, Pfeiffer, and Does 1 through 50; (7) a violation of California Civil Code § 52.1 against all Defendants; (8) a violation of California Government Code § 845.6 against all Defendants and Does 1 through 50; (9) a violation of the ADA and RA against Defendant CDCR and Does 1 through 50; and (10) a survival claim pursuant to California Code of Civil Procedure § 377.30 against all Defendants and Does 1 through 50. (Doc. 19 at 9-35.)

## V.    DISCUSSION

### A.  Failure to Protect and Failure to Provide Medical Care

Defendants argue that Plaintiff fails to allege sufficient information to support these claims because the amended complaint "lacks any specific factual allegation as to Defendants Pfeiffer and Macomber individually, or specifically as to DOES 1 through 50; to the contrary, it features factually devoid conclusions that are largely applied to all Defendants." Defendants further contend the amended complaint does not allege "any facts to show harm to Decedent caused by delay in providing medical care following the October 14, 2023 incident." Defendants maintain that the three-page long cause of action concerning a failure to provide medical care "includes multiple references to Defendants' alleged failure to train and supervise others," omits any reference to Decedent's stabbing, and fails "to state how any medical delay by Defendants on October 14, 2023 or any day thereafter cause harm to the Decedent."

Plaintiff responds by asserting the first amended complaint properly alleges Eighth Amendment claims. It alleges "a long history of deaths of those incarcerated and inmate-on-inmate violence" prior to Decedent's incarceration, alleges Plaintiff's bipolar disorder and schizophrenic tendencies required medication and segregation, that "CDCRs' correctional officers knew and/or had reason to know that Decedent was not permitted to enter the yard with the general population due to his mental disability," that "Defendants were on notice of the deficient policies and procedures, including but not limited to employees routinely permitting those who should be segregated" to non-segregated areas, that "Defendants failed to properly

7

train and supervise the jail staff …," that it alleges "additional facts regarding [Defendants'] tortious conduct," by alleging that Pfeiffer, as warden, "was responsible for the promulgation of and compliance with the policies and procedures, the administration of KVSP, and the supervising and training of KVSP's personnel," that Macomber, as CDCR secretary, "is and was responsible 'for the promulgation of the policies and procedures and allowance of practices and customs pursuant to which the acts of the employees of the CDCR alleged herein committed' as well as 'for the administration of the CDCR and the supervision, training and hiring of persons, agents, and employing working within the CDCR," and that Macomber "was responsible for ensuring Decedent's medical treatment and that Decedent was isolated from the general population."

Plaintiff points to the allegations in paragraph 36 of the first amended complaint, arguing "Pfeiffer and Macomber 'maintained, permitted and ratified unconstitutional policies and customs" on those bases. Further, Plaintiff avers she has adequately pled actual and/or constructive knowledge based upon the items listed in paragraph 38. She argues "is it certainly 'plausible' that they had actual and/or constructive knowledge" of those facts and that "both had the responsibility and duty to administer the prison to, among other things, protect the rights and safety of those incarcerated, and that neither did so," as asserted in paragraphs 39, 50, and 51.

Plaintiff contends Defendants categorically dismiss the additional allegations in paragraphs 16-17, 34-39, and 48-54, curing "the lack of specific allegations regarding the Supervisory Defendants" raised in the Court's earlier findings.

Plaintiff concludes she has "sufficiently alleged facts showing that at the time Decedent was attacked, violence at Kern Valley State Prison was infested with an endemic and featured a culture of violence, which posed a substantial risk to Decedent's safety in light of his mental disability, and that Supervisory Defendants were responsible for creating the prison environment which lead" to his death.

As concerns deliberate indifference, Plaintiff argues "Defendants mistakenly conflate the pleading requirements with what is needed to prevail on the merits" and notes she is "not required to prove deliberate indifference or an Eight Amendment violation," she need only provide a short,

plain statement establishing entitlement to relief and to "plead plausible facts" both of which were accomplished.

<u>The Applicable Legal Standards</u>

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Id.* (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis & citations omitted).

To state a failure to protect claim, the Eighth Amendment requires allegations sufficient to plausibly show that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*, 511 U.S. at 847. The objective component of an Eighth Amendment requires that a prisoner show he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate

9

indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.'"" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

10

safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson*, 290 F.3d at 1188).

To prevail on a deliberate indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096.

Delay of medical care can violate the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 745-46 (9th Cir. 2002).

<u>The First Cause of Action & Analysis</u>

In the first cause of action, Plaintiff alleges a failure to protect from harm. (Doc. 19 at 9-13.)

Specifically, Plaintiff alleges Macomber, Pfeiffer and Does 1 through 50 were deliberately indifferent "to DECEDENT's protection, safety, and serious medical and mental health needs" by failing "to train, supervise and/or take other appropriate measures to prevent the acts and/or omissions" causing wrongful death and depriving Plaintiff of a parent-child relationship "in denying DECEDENT medical care, treatment, and medications, and protection and safety … and access to medical care while suffering a medical emergency" at KVSP. (Doc. 19 at 9-10, ¶¶ 31-32.) Plaintiff alleges CDCR's training policies were inadequate "to train its officer, agents and

11

employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals who are violently and/or gravely attacked by others who are incarcerated." (*Id*. at 10, ¶ 33.) Plaintiff alleges Macomber, Pfeiffer, and Does 1 through 50 "knew that their failure to adequately train CDCR officers, medical and mental health staff, including other agents and employees, to ensure that those in general population are not allowed the opportunity to obtain access to persons incarcerated required to be segregated made it highly predictable that its custody, medical and mental health staff would engage in conduct that would deprive persons such as DECEDENT, and thus Plaintiff GARCIA, of her rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately." (*Id*.) Those same Defendants' "official policies and/or longstanding practices and customs, including but not limited to its training policies" caused the constitutional deprivations alleged and "are so closely related to DECEDENT's injuries and death and thus the deprivation of the rights of Plaintiff as to be the moving force causing those injuries." (*Id*., ¶ 34.)

Next, Plaintiff alleges Defendant Pfeiffer, "a policymaker … ratified the actions and omissions of Defendants DOES 1 through 50, all of whom were officers, medical and mental health staff at KVSP, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions." (Doc. 19 at 10-11, ¶ 35.) Plaintiff alleges Defendants Macomber and Pfeiffer "and supervisory Defendants maintained, permitted, and ratified unconstitutional policies and customs that were the moving force behind the violation," including: "a) Chronic understaffing, resulting in inadequate supervision, delayed emergency responses, and dangerous housing conditions; b) Failure to address known inmate violence, including repeated assaults, threats, and identifiable patterns of risk in specific yards, building, or housing units; c) Failure to train or supervise officers in inmate safety protocols, threat assessment, emergency response, and medical urgency recognition; d) A custom of ignoring inmate safety grievances, protective housing requests, and credible enemy concerns; e) Delays and/or denial of medications, medical treatment, psychiatric treatment, inpatient care, inadequate staffing, failure to follow proper medical protocol for the conditions DECEDENT suffered from, poor communication between

12

custody and medical providers, and lack of emergency-response training; f) Failure to implement or enforce mandatory CDCR policies regarding cell assignments, threat documentation, response times, and medical rapid intervention; g) Tolerance of and indifference to prior similar incidents, [including] previous inmate homicides and serious assaults in the same facility of housing unit." (*Id*. at 11, ¶ 36.) Plaintiff maintains the "policies, practices, and customs were widespread, longstanding, and well-known to supervisory personnel" including Macomber and Pfeiffer. (*Id*., ¶ 37.)

Further, Plaintiff asserts Macomber and Pfeiffer had actual and constructive knowledge of these unconstitutional conditions through the following: "a) Internal incident reports; b) Use-of-force reviews; c) Inmate grievances (602s); d) Staff complaints and whistleblower reports; e) Repeated assaults and homicides at KVSP; f) Prior internal audits and OIA/OIG findings; g) Classification committee reviews identifying ongoing safety risks." (Doc. 19 at 11-12, ¶ 38.) Despite that knowledge, Plaintiff asserts Macomber and Pfeiffer, "and supervisory Defendants, failed to act, failed to correct the unconstitutional conditions, and failed to provide adequate training or supervision, thereby creating an environment where the violation of DECEDENT's rights was highly foreseeable and substantially certain to occur." (*Id*. at 12, ¶ 39.) Plaintiff maintains those "unconstitutional policies and customs were a moving force behind the deliberate-indifference and wrongful-death violations." (*Id*., ¶ 40.) As a direct and proximate result of "Defendants' conduct," Decedent's Eighth Amendment rights were violated and he "experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life …." (*Id*., ¶ 41; *see also* ¶ 43.) Plaintiff alleges Macomber, Pfeiffer, and Does 1 through 50 acted knowingly, maliciously, and without conscious and reckless disregard for the rights and safety of Decedent and others. (*Id*., ¶ 42.)

Supervisors may be liable for their own conduct "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Under this theory of personal involvement, "a plaintiff must show the supervisor breached a duty

13

to plaintiff which was the proximate cause of the injury." *Id*. (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991), abrogated on other grounds, *Farmer*, 511 U.S. 825). "The requisite causal connection can be established ... by setting in motion a series of acts by others." *Redman*, 942 F.2d at 1447 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). It may also be established by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

Likewise, supervisory liability may exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal quotation omitted).

Here, liberally construed and accepting all facts as true, Plaintiff's first amended complaint fails to plausibly allege Eight Amendment failure to protect claims against Defendants Macomber and Pfeiffer. Although Plaintiff alleges that Macomber, as CDCR Secretary, and Pfeiffer, as KVSP warden, are supervisory officials who maintained unconstitutional policies and customs like chronic understaffing, failed to address inmate assaults and threats, failed to train or supervise officers concerning inmate safety protocols, threat assessment, emergency response and medical urgency, and that the unconstitutional conditions were known to Macomber and Pfeiffer by way of reports, reviews, grievances, complaints, audits, and repeated assaults and homicides at KVSP, those allegations are vague and conclusory as pled. Plaintiff fails to identify any specific policy and offers nothing more than sweeping generalizations about purported customs. *Crowley*, 734 F.3d at 977; *Butler v. Cal. Dep't of Corrs. and Rehab.*, No. 1:25-cv-01011-CDB, 2026 WL 1021150, at *8 (E.D. Cal. Apr. 15, 2026) ("Plaintiffs do not identify any particular policy,

custom, or practice implemented by Defendant Pfeiffer that was so deficient that the policy itself is a repudiation of the constitutional rights at issue and is the moving force of the constitutional violations alleged herein. Rather, Plaintiffs make only conclusory and general allegations that Defendant Pfeiffer ratified or maintained unconstitutional practices"); *Estate of Torres v. Cal. Dep't of Corrs. and Rehab.*, No. 1:24-cv-00731-KES-SAB, 2024 WL 5186897, at *12-14 (E.D. Cal. Dec. 20, 2024) (discussing policy-based conditions of confinement, failure to protect, and loss of familial relations claims and concluding "Plaintiffs have failed to state claim for their claims of conditions of confinement, failure to protect, and loss of familiar relations"). Plaintiff's allegations are simply too broad to find they plausibly allege the subjective component of the deliberate indifference test.

As concerns Does 1 through 50, Plaintiff's allegations are vague and conclusory. Plaintiff makes no attempt to indicate which Doe defendants acted or failed to act. *See Gibson v. City of Portland*, 165 F.4th 1265, 1287-90 (9th Cir. 2026) (holding that grouping some or all defendants and ascribing to them generalized assertions of overall conduct is insufficient). And the first amended complaint is unclear as concerns the number of purported supervisory Doe defendants. For example, at one point Plaintiff refers to Does 1 through 15 and appears to allege those individuals are employed in a supervisory capacity. But at other points, Does 1 through 50 are grouped together again.

In sum, Plaintiff fails to plausibly allege Eighth Amendment failure to protect claims against Defendant Macomber, Pfeiffer and Doe defendants. The undersigned will recommend Defendants' motion to dismiss the first cause of action be granted.

The Second Cause of Action & Analysis

In the second cause of action, Plaintiff alleges the failure to provide medical care. (Doc. 19 at 13-16.)

Plaintiff alleges Defendants Macomber, Pfeiffer, and Does 1 through 50 had actual knowledge that: Decedent suffered from a bipolar disorder and schizophrenic tendencies; required psychiatric medications "that they denied and/or delayed," and that "Defendants failed to provide adequate treatment … adequate mental health counseling, inpatient care, and ignored the risks" of

15

their deliberate indifference, "which should have included isolating [Decedent] from the general population to keep him safe' from harm. (Doc. 19 at 13, ¶ 47.) Plaintiff further alleges Macomber, Pfeiffer, and Does 1 through 50 "had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by CDCR and KVSP in this matter, as well as all agents at KVSP." (*Id.*, ¶ 48.) Moreover, Plaintiff alleges those same Defendants "failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 15, and other CDCR and medical personnel working at KVSP, with deliberate indifference to Plaintiff, DECEDENT's, and others' constitutional rights, which were thereby violated as described above." (Id., ¶ 49.) She maintains that as supervisors Macomber, Pfeiffer, and Does 1 through 50 "each permitted and failed to prevent the unconstitutional acts of" others "under their supervision and control," failed to "properly supervise … with deliberate indifference to the rights and safety and protections while incarcerated at the CDCR's institution, KVSP, specifically the rights and needs" of the Decedent. (*Id.* at 13-14, ¶ 50.)

Further, Plaintiff alleges that Macomber, Pfeiffer, and Does 1 through 50 "either directed his or her subordinates in conduct that violated DECEDENT's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonable should have known would deprive" Decedent of his rights. (Doc. 19 at 14, ¶ 50.) Each knew the "subordinates were engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates" to violate Decedent's rights, and that each "is liable in their failures to intervene in their subordinates' apparent violations." (*Id.*) Plaintiff specifically alleges Macomber, Pfeiffer, and Does 1 through 50 knew or should have known Decedent was diagnosed with schizophrenia, requiring he be housed separately from the general population, and receive medications, medical and psychiatric care, that "was denied and/or delayed." (*Id.*, ¶ 51.) Next, Plaintiff maintains that the "unconstitutional customs, policies, practices, and/or procedures of Defendants … were directed, encouraged, allowed and/or ratified by policymaking officers for Defendants CDCR and KVSP," including

16

Macomber, Pfeiffer, and Does 1 through 50. "with deliberate indifference to Plaintiff, DECEDENT's, and others' constitutional rights." (*Id.*, ¶ 52.) Plaintiff contends the "unconstitutional acts and/or omissions" of Does 1 through 50 "and other CDCR and KVSP personnel … were approved, tolerated, and/or ratified by policymaking officers for the CDCR and KVSP," including Macomber, Pfeiffer, and Does 1 through 50. (*Id.* at 14-15, ¶ 53.) Plaintiff alleges she is informed and believes they "have direct knowledge of the fact that the death of DECEDENT was not justified or necessary but represented deliberate indifference to his rights to be protected and safe while incarcerated" at KVSP. (*Id.*) She maintains they "have approved [of and ratified] the conduct and decisions of" Does 1 through 50 and "made a deliberate choice to endorse such conduct and decisions," resulting in Decedent's death. (*Id.*) She alleges that in doing so, Macomber, Pfeiffer, and Does 1 through 50 "have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants." (*Id.*) Plaintiff alleges these Defendants "were and are aware of a pattern of misconduct and injury, and a code of silence, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within CDCR and KVSP." (*Id.*)

Next, Plaintiff alleges the "aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants PFEIFFER, MACOMBER and DOES 1 through 50 were a moving force and/or a proximate cause of the deprivations of DECEDENT's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983." (Doc. 19 at 15, ¶ 54.) She alleges "Defendants subjected DECEDENT to their wrongful conduct … knowingly, maliciously, and with conscious and reckless disregard" for his rights and the rights of others. (*Id.* at 15-16, ¶ 55.) Finally, Plaintiff alleges Macomber, Pfeiffer, and Does 1 through 50 "actions, omissions, customs, policies, practices, and procedures" were the direct and proximate cause of "Plaintiff[;s] sustained serious and permanent injuries." (*Id.*, ¶ 56.)

Initially, the Court notes that Plaintiff's second cause of action — despite a "Failure to

Provide Medical Care" appearing in the title — is a confusing jumble of assertions pertaining to both a failure to provide medical care and a failure to protect (the first cause of action). The Court will not revisit any failure to protect allegations in the second cause of action and instead will focus only on those assertions relating to a failure to provide medical care.

As concerns Plaintiff's Eighth Amendment medical care claim, the previously assigned magistrate judge found the original complaint's factual allegations insufficient. (Doc. 15 at 10.) Specifically, she found:

> Plaintiffs' allegations are not sufficient to state a cognizable claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. First, Plaintiffs' allegations are conclusory, lacking facts identifying a specific medical need. Second, and critically, Plaintiffs do not adequately allege that Defendants knew of and disregarded an excessive risk to Decedent's medical condition or mental health. … Plaintiffs allege that Defendants knew or must have known that Decedent's medical condition and medical needs were serious, and knew or must have known that Decedent required access and delivery of medical/mental health care. However, grouping all Defendants together does not adequately allege what each individual knew. … The allegations in the sixth cause of action are conclusory without a factual basis.

> To the extent Plaintiffs' Eighth Amendment claim for failure to provide medical care is premised on the October 14, 2023 incident on the prison yard, the complaint also fails to state a cognizable claim. Deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. … In this instance, the complaint lacks factual allegations demonstrating that prison officials failed to provide medical care or were deliberately indifferent to a serious medical need on October 14, 2023. Plaintiffs allege only that Decedent was attacked by two other inmates, "sustained multiple stab wounds and was transported to an outside medical facility for higher level of care." (Comp. ¶ 21.) Plaintiffs do not allege a denial, delay, or interference with medical care on October 14, 2023, nor do they include any factual allegations concerning the medical care provided to Decedent prior to his transport to an outside medical facility.

> … Although Plaintiffs argue that they have pled sufficient facts demonstrating deliberate indifference to [Decedent's] safety when he was allowed to enter the yard and interact with the general population, Plaintiff's allegations are alleged in a conclusory manner.

(Doc. 15 at 11.)

Here, it is unclear from Plaintiff's amended allegations how Macomber and Pfeiffer knew

18

Decedent was diagnosed with bipolar disorder and schizophrenic tendencies, required psychiatric medications, mental health counseling and treatment and/or inpatient care. The fact Decedent "had bipolar disorder with schizophrenic tendencies" and "was often medicated" does not explain how Macomber, Pfeiffer, or any other individual would have such knowledge. *Iqbal*, 556 U.S. at 678. There are no allegations that Decedent advised anyone at KVSP – let alone the warden or the CDCR Secretary – of the diagnosis, his need for psychiatric medications to treat the disorder, or a need for mental health counseling and treatment. The fact Decedent received a diagnosis and was treated for bipolar disorder and/or schizophrenic tendencies in the past does nothing to explain how Macomber and Pfeiffer had or should have had such knowledge.

Plaintiff has not alleged a policy that is so deficient that it is a repudiation of constitutional rights and the moving force of any deliberate indifference to a serious medical need. Plaintiff has not alleged a policy or custom at KVSP that requires or fails to require that an inmate with bipolar disorder and schizophrenic tendencies be denied access to the general population yard. Without more, all Plaintiff has alleged is that by virtue of this one occasion there exists unidentified policies and customs. *See, e.g.*, *Estate of Torres*, 2024 WL 5186897, at *11 ("Plaintiffs have identified a policy in the broadest sense, but they have not alleged the mechanics of how the policy was or was not implemented and how the policy fails to address serious medical needs for people with disabilities"). And merely asserting Defendants should have isolated Decedent from the general population is insufficient. *Iqbal*, 556 U.S. at 678; *Balistreri*, 901 F.2d at 699; *Butler*, 2026 WL 1021150, at *8.

As before,[2] to the extent Plaintiff's claim for failure to provide medical care is premised on the October 14, 2023, incident on the yard, the first amended complaint also fails to state a cognizable claim. Plaintiff alleges no facts from which an inference reasonably may be drawn that after Decedent was stabbed by two other inmates, medical care was denied, interfered with, or delayed at KVSP before Decedent was transported to an outside hospital. Simply put, Plaintiff's allegations are conclusory.

---

[2] *See* Doc. 15 at 11 (discussing and recommending dismissal of sixth cause of action for deliberate indifference to serious medical need).

19

Accordingly, the undersigned will recommend Defendants' motion to dismiss the second cause of action be granted.

### B. Loss of Familial Relations

Defendants argue Plaintiff has failed to allege sufficient facts to state a loss of familial relations claim. More particularly, they contend the "first amended complaint suffers from the same shortcomings" found in the Court's previous findings and recommendations because it "continues to feature allegations of Defendants' failures at 'the policy level.'" Defendants maintain that "[l]ike the initial complaint, Plaintiff's first amended complaint fails to describe how Defendants were 'deliberately indifferent to DECEDENT's protection, safety, and serious medical and mental health needs,' violated decedent's constitutional rights, or engaged in any other conduct that shocks the conscience."

Plaintiff contends she has properly pled this claim because "the Supervisory Defendants had actual knowledge that Decedent had a mental disability" and "needed to be segregated," and that the risk was obvious; therefore, Defendants' "deliberate indifference to a vulnerable inmate's safety rises to the conscience shocking level required for a familial relations claim, especially considering the special relationship between prison officials and inmates in their custody." She maintains Macomber and Pfeiffer "had time to deliberate, i.e., the period in which Decedent's medications and treatment were being denied and/or delayed, before ever allowing the Decedent to enter the yard with the general population," making their actions conscious shocking.

#### Applicable Legal Standards

Parents have a constitutionally protected liberty interest in the companionship and society of their children. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014); *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008). "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. Cal. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience

20

shocking, in a constitutional sense.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *see also Porter*, 546 F.3d at 1137 ("only official conduct that 'shocks the conscience' is cognizable as a due process violation"). "[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (quoting *Lewis*, 523 U.S. at 846). A prison official's deliberately indifferent conduct will generally 'shock the conscience'" if "the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire*, 726 F.3d at 1075.

<u>Analysis</u>

The undersigned agrees that Plaintiff's first amended complaint suffers from the same deficiencies identified by the previously assigned magistrate judge in recommending dismissal of Plaintiff's claim. She found:

> Contrary to Plaintiff's assertions, there were "no factual allegations that Defendants — particularly Defendants Allison, Macomber, and Pfeiffer — knew of Decedent's specific mental health needs, knew that Decedent would be entering the general population, knew of any particular risk of harm to Decedent's safety and protection posed by Decedent's entering the yard with the general population as a result of his mental disability, or even know of, and had time to deliberate, before Decedent entered the yard on October 14, 2023. Conclusory allegations that Defendants were on notice and had time to deliberate before acting or failing to act are not sufficient.
>
> Plaintiffs' claim for loss of familial relations against Defendants also appears to be based, in part, on allegations that Defendants failed at the policy level, and that those failures cause the deprivation of constitutional rights of Plaintiff Mendoza Garcia and Decedent. However, Plaintiffs do not identify specific conduct that 'shocks the conscience,' and instead allege only that the policies and training were "inadequate."

(*See* Doc. 15 at 13-14.) As indicated above, there are no facts alleged setting forth how Defendants Macomber and Pfeiffer, or any other correctional employee or official, had knowledge that Decedent suffered from bipolar disorder with schizophrenic tendencies. Moreover, there are no facts alleged that would permit the drawing of a reasonable inference that they knew Decedent would be at risk of serious harm by entering the yard with the general population on October 14, 2023, or even facts that would demonstrate Macomber, Pfeiffer, or others had time to deliberate before acting or failing to act. *Lewis*, 523 U.S. at 847; *Lemire*, 726

F.3d at 1075; *Estate of Torres*, 2024 WL 5186897, at \*12-14. Therefore, the Court will recommend Defendants' motion to dismiss the loss of familial relations claim be granted.

### C. Supervisory Liability

Defendants assert Plaintiff has failed to adequately allege supervisory claims against Pfeiffer and Macomber because no facts show those Defendants were responsible for training correctional staff or that they were aware of staff's training status. Defendants maintain the amended complaint "contains the same sparse and conclusory allegations against Defendants Pfeiffer and Macomber that the Court previously rejected." The amended complaint does not include allegations demonstrating or suggesting Pfeiffer or Macomber participated in or directed the violations or knew of the alleged violations and failed to act to prevent them. Further, Defendants contend no allegations suggest Pfeiffer or Macomber promulgated or implemented a specific policy permitting inmates that should be segregated from the general population to access areas designated for the general population, nor has Plaintiff identified a specific policy that is deficient regarding the provision of emergency care or adequate medical and mental health care. They contend a "broad list of vaguely stated supposed customs, policies, or practices" is insufficient to support a supervisory liability claim. Further, Defendants maintain Plaintiff's allegations based on a failure to train, supervise, and discipline are inadequate for the reason the claim was previously dismissed with leave to amend, to wit: general allegations regarding training and policy deficiencies coupled with conclusory assertions that Defendants failed to correct policies, procedures, and practices despite having notice of dangers and problems. Finally, Defendants contend the first amended complaint, like the initial complaint, appears to involve allegations "premised on a theory of ratification." But Plaintiff continues to allege only an isolated failure to discipline and without more the allegation is insufficient to establish liability.

In sum, Defendants maintain there is no indication that any supervisory Defendant "had anything to do with the alleged training or policies, or how such matters caused harm to Decedent," nor does the amended complaint allege facts to suggest Defendants had knowledge of specific training or policy deficiencies, or that their subordinates were committing constitutional violations as a result.

In opposition, Plaintiff asserts her fourth cause of action is sufficiently pled. She maintains she has established "Pfeiffer was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the employees of KVSP, alleged herein were committed," that Pfeiffer "was responsible with the administration of KVSP and was responsible for the supervision, training and hiring," and that he "failed to take corrective action, discipline, or remove the command staff at KVSP who permitted" segregated inmates to access restricted areas, and ratified that conduct. Plaintiff contends "Macomber was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the employees of the CDCR alleged herein committed" and "was responsible for the administration of the CDCR and the supervision, training and hiring …." She avers the "Supervisory Defendants knew that employees routinely permitted" segregated inmates to access general population areas, thus failing to ensure Decedent remained segregated, and that the "Supervisory Defendants also failed to properly train and supervise jail staff regarding policies, procedures and protection for the protection of inmate[s] who suffer from a mental disability," and ratified those actions and practices. Plaintiff maintains she has sufficiently pled the fourth cause of action but alternatively asks the Court to grant leave to amend if it disagrees, stating she "can allege, if necessary, additional facts as to the Supervisory Defendants' personal involvement in the instant action."

The Applicable Legal Standards

As summarized above in addressing Plaintiff's first cause of action, liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons*, 609 F.3d at 1020-21 (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

23

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman*, 942 F.2d at 1446 (citations & quotations marks omitted), *abrogated on other grounds by Farmer*, 511 U.S. 825.

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

<u>Analysis</u>

Plaintiff's allegations concerning Defendants Macomber and Pfeiffer are insufficient. There are no facts alleged that either Macomber or Pfeiffer personally participated in the constitutional violations alleged here. *Taylor,* 880 F.2d at 1045. Nor are Plaintiff's general allegations that Macomber and Pfeiffer failed to ensure Decedent's safety sufficient because Plaintiff has failed to specifically allege a causal link. *Fayle*, 607 F.2d at 862. Rather, Plaintiff continues to assert conclusory allegations that Macomber and Pfeiffer possessed knowledge that Decedent had been diagnosed with bipolar disorder with schizophrenic tendencies requiring him to be segregated from the general population, that Decedent was not so segregated and thus was at

24

risk. But these allegations are vague and conclusory for the reasons previously identified herein and largely amount to nothing more than recitations of elements of a claim. *Twombly*, 550 U.S. at 555. Such vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *Ivey*, 673 F.2d at 268.

As this Court has previously found, "[t]here are no factual allegations in the complaint suggesting that Defendants promulgated or implemented a specific policy to permit inmates that should be segregated from the general population to access areas designated for the general population at KVSP, nor are there factual allegations identifying a specific policy alleged to be deficient related to the provision of emergency care or adequate medical and mental health care." (*See* Doc. 15 at 16.) That remains the case in the first amended complaint.

*Failure to Train or Supervise*

To establish a failure to train claim, a plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers ... can reasonably be said to have been deliberately indifferent to the need.'" *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ). The same standard applies to failure to supervise claims. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). A plaintiff must allege facts showing the failure to train resulted from a defendant's "deliberate" or "conscious" choice and that a sufficient causal connection exists between the supervisor's wrongful conduct and the alleged constitutional violation. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (citation omitted).

Ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Instead, a plaintiff usually must demonstrate "[a] pattern of similar constitutional violations by untrained employees." *Id*. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id*.

In a failure to train case, however, a plaintiff need not always prove that there have been

25

repeated violations. Even in the absence of a prior pattern of constitutional violations, *Canton* instructs that in some situations the need for training is "so obvious" and "so likely to result in the violation of constitutional rights," that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Canton*, 489 U.S. at 390. In the rare case, "a particular showing of obviousness can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." *Wereb v. Maui Cnty.*, 830 F. Supp. 2d 1026, 1032 (D. Hawaii 2011) (quoting *Connick*, 563 U.S. at 64). If a violation of a protected right is a "highly predictable consequence" of a decision not to train, it is possible to establish a "failure in a ... training program ... so obviously deficient that it could lead to liability for damages resulting from a single violation." *Id*. A complete absence of training supports an inference of deliberate indifference. *Connick*, 563 U.S. at 67-68 (quoting *Canton*, 489 U.S. at 391).

Plaintiff has failed to allege sufficient facts that any failure to train or to supervise resulted from Macomber or Pfeiffer's "deliberate" or "conscious" choice and that a sufficient causal connection exists between their wrongful conduct and the alleged constitutional violation. *Canell*, 143 F.3d at 1213. No facts alleged plausibly suggest that Macomber and Pfeiffer were on notice of specific training or policy deficiencies, or that correctional staff or others were committing constitutional violations due to those specific training or policy deficiencies. *Connick*, 563 U.S. at 62. Plaintiff's allegations remain general and conclusory as concerns any pattern of constitutional violations. *E.g., Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) ("Plaintiff merely recites the elements that would support such a claim without alleging any facts to cross the plausibility threshold"). Nor do the allegations establish that "the need for training is 'so obvious' and 'so likely to result in the violation of constitutional rights,' that 'the failure to provide proper training may fairly be said to represent a policy for which" these officials are responsible and may be held liable. *Canton*, 489 U.S. at 390; *Ivey*, 673 F.2d at 268; *Wereb*, 830 F. Supp. 2d at 1032.

*Failure to Discipline/Ratification*

Although Section 1983 liability may attach where an authorized policymaker approved a

26

subordinate's unconstitutional conduct, alleging "a mere failure to overrule a subordinate's actions, without more, is insufficient" to state a claim under this theory. *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). Similarly, alleging a "mere failure to discipline does not amount to ratification." *Adomako v. City of Fremont*, No. 17-cv-06386, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018). To show ratification, a plaintiff must show "that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002). A policymaker's "knowledge of an unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

Plaintiff argues "Pfeiffer failed to take corrective action, discipline, or remove the command staff at KVSP who permitted those inmates that should be segregated to gain access to restricted areas of yard reserved for the general population" and instead "ratified their actions and the practices." And that the "Supervisory Defendants knew that employees routinely permitted those that should be segregated to access areas designated for the general population and "failed to properly train and supervise jail staff regarding policies, procedures and protection" for inmates who suffer from a mental disability, "ratified their actions and the practices." These allegations largely mirror those alleged in the original complaint that were found to be inadequate by the previously assigned magistrate judge. As she explained (Doc. 15 at 19), Plaintiff alleged "only an isolated failure to discipline." *See, e.g.*, *Johnson v. Warden*, No. 2:23-cv-0908-DC-JDP (P), 2025 WL 1400193, at *4 (E.D. Cal. May 14, 2025) ("To bring [a ratification] claim, there must be 'something more' than an isolated failure to discipline or the fact that a policymaker concluded an officer acted within applicable policies and procedures"), adopted 2025 WL 2391487 (E.D. Cal. Aug. 18, 2025); *Magdaleno v. Cnty. of Riverside*, No. EDCV 21-2027 (SHKx), 2022 WL 1843977, at *4 (C.D. Cal. Apr. 14, 2022) ("There are few—if any—facts alleged in the FAC to support a claim for ratification against the County ... allegations are merely boilerplate language and do not go beyond a mere failure to discipline, which is insufficient to allege ratification ... there are no inferences to be drawn from the facts alleged that the County has ratified the conduct outlined in the FAC [as] [r]atification requires some level of supervisory

27

approval—either explicit or tacit—that is not properly alleged here"); *Jack v. Cnty. of Stanislaus*, No. 1:17-CV-0520 AWI SAB, 2017 WL 4123930, at *11 (E.D. Cal. Sept. 15, 2017) ("there are no factual allegations in the Complaint that discuss discipline, and what occurred in this case is one incident, against one person (Jack), by one deputy (Pearson). Without more, it is a 'sporadic' event that is not a formal edict of the County or policy maker and is not widespread or longstanding" [fn. omitted]).

In sum, the Court will recommend Defendants' motion to dismiss the fourth cause of action be granted.

### D. Negligence – Wrongful Death

Defendants argue Plaintiff's fifth cause of action must be dismissed because Plaintiff has not alleged negligent personal involvement by Macomber or Pfeiffer and because public employees cannot be liable for the acts or omissions of others. More specifically, Defendants contend generalized allegations that "Macomber and Pfeiffer were deliberately indifferent to the need to train subordinates" fails to state a negligence claim. Neither Macomber nor Pfeiffer "breached a duty, that any such breach in any vague and unspecified matter involved personnel who Defendant-supervisors directly dealt with and who also oversaw the Decedent, or was the proximate cause of Decedent's death."

Plaintiff counters that she has sufficiently pled this cause of action by alleging all Defendants owed her a duty, breached that duty by acting negligently, and were the direct and proximate cause of her resulting damages. Alternatively, Plaintiff asks the Court to grant leave to amend if it disagrees, stating she "can allege, if necessary, additional facts as to the Supervisory Defendants' personal involvement."

<u>The Applicable Legal Standards</u>

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary* loss suffered by the *heirs*." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263-64 (2006) (emphasis in original). The elements of the tort of negligence are "a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Vasilenko v.*

28

*Grace Family Church*, 3 Cal.5th 1077, 1083 (2017). Section 820.8 states: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Cal. Gov't Code § 820.8. "In essence, the provision prevents public officers from being held vicariously liable for the torts of their subordinates." *Graves v. California Dep't of Corr. & Rehab.*, No. EDCV 17-1086 JGB (SPx), 2019 WL 8168060, at *10 (C.D. Cal. Nov. 14, 2019).

Analysis

In her opposition, as concerns California Government Code section 820.8, Plaintiff states that section is not applicable because she does not "assert liability based on a theory of 'respondeat superior,' as to the Supervisory Defendants, but rather that each Supervisory Defendant is liable for their own tortious acts, such as failing to supervise and/or train, and failing to enact appropriate standards and policies." (*See* Doc. 24 at 29.) But as the previously assigned magistrate judge found, "[e]ven if the Court were to accept that § 820.8 is inapplicable in the context of a negligence-wrongful death claim, [Plaintiff has] not adequately alleged claims" against Defendants Macomber and Pfeiffer "premised on the failure to train or supervise, or [failure] to enact appropriate standards and policies." (*See* Doc. 15 at 20.) As indicated above, Plaintiff's allegations in that regard remain insufficient. The Court will recommend Defendants' motion to dismiss the fifth cause of action be granted.

### E.  Cruel and Unusual Punishment

Defendants maintain Plaintiff's sixth cause of action is deficient because the facts alleged are conclusory or nonexistent concerning what Defendants did to deprive Decedent of his right to be free from cruel and unusual punishment.

Plaintiff argues she has pled sufficient facts demonstrating deliberate indifference as concerns "reasonable security, safe and appropriate housing, and monitoring to accommodate [Decedent's] mental conditions and his vulnerability to abuse and assaults by other inmates." Plaintiff contends Macomber and Pfeiffer "knew or must have known that Decedent was vulnerable to injury, suffering, and attacks by other inmates, and that if reasonable measures were

29

not taken to abate the risk," Decedent would suffer serious harm. She alleges Macomber and Pfeiffer "exposed Decedent to unsafe conditions by placing him with violent inmates in dangerous cells and/or yards, without protections and without proper monitoring for his safety."

<u>The Applicable Legal Standards</u>

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). To establish a violation of this duty, a prisoner must first demonstrate an objectively serious deprivation, one that amounts to the denial of "the minimal civilized measures of life's necessities." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Second, a prisoner must demonstrate that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). A prison official is liable for denying an inmate humane conditions of confinement only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

<u>Analysis</u>

As previously found in relation to Plaintiff's original complaint, Plaintiff's first amended complaint fails to allege sufficient facts to demonstrate or permit the drawing of a reasonable inference that Defendants Macomber and Pfeiffer had knowledge of Decedent's need for "reasonable security, safe and appropriate housing, and monitoring to accommodate mental conditions and his vulnerability to abuse and assaults by other inmates." The Decedent's diagnosis at some point prior to his incarceration does not explain how Macomber or Pfeiffer or any other individual at KVSP would know Decedent required another form of security, housing or monitoring, thus making him vulnerable to harm from other inmates. *Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 303; *Estate of Torres*, 2024 WL 5186897, at *12-14.

For these reasons, the Court finds Plaintiff fails to plausibly allege an Eighth Amendment

cruel and unusual punishment claim and will recommend Defendants' motion to dismiss the sixth cause of action be granted.

### F.  Bane Act Claim

Defendants argue the first amended complaint fails to state a Bane Act claim. More particularly, they contend Plaintiff's attempt to plead a Bane Act claim offers only conclusory allegations concerning deliberate indifference to Decedent's serious medical needs, infliction of cruel and unusual punishment, reckless disregard of his right to protection from inmate assaults, and failure to provide immediate medical care. Additionally, Defendants maintain Plaintiff's allegations fail to allege specific intent to violate Decedent's rights, or any allegations that would allow for such an inference because "the allegations against Defendants Pfeiffer and Macomber are largely based on their alleged failures as supervisors in general to protect inmates."

Plaintiff counters that she has properly pled a Bane Act claim, because she alleges the Supervisory Defendants engaged in tortious conduct in the scope of their employment, were aware of Decedent's mental disability and need to be segregated, were deliberately indifferent to the risk posed to Decedent, and failed to treat and protect Decedent.

### The Applicable Legal Standards

The California Bane Act protects against interference "by threat, intimidation, or coercion" or an attempt to do the same "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Simmons v. Super. Ct.*, 7 Cal.App.5th 1113, 1125 (2016) (internal citations & quotations omitted).

A plaintiff alleging a Bane Act claim "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234

31

Cal.App.4th 41, 67 (2015) (citing Cal. Civ. Code § 52.1). The claim must allege facts that would permit the drawing of an inference that the defendant had a specific intent to violate the constitutional right at issue. *Id*. Specific intent may be shown by demonstrating that the defendant acted "in reckless disregard" of that right. *Cornell v. City & Cnty. of San Francisco*, 17 Cal.App.5th 766, 803 (2017), as modified (Nov. 17, 2017).

Several district courts, including judges of this Court, "have adopted the position that a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs ... adequately states a claim for relief under the Bane Act because deliberate indifference claims extend far beyond ordinary tort claims and have been associated with affirmatively culpable conduct." *Cravotta v. Cnty. of Sacramento*, 717 F.Supp.3d 941, 964 (E.D. Cal. 2024) (quotations & citation omitted) (collecting cases).

Analysis

The Court finds Plaintiff does not identify any basis for a Bane Act claim beyond the alleged federal constitutional violations and, as to those, the Court has determined that Plaintiff failed to adequately allege Eighth Amendment deliberate indifference to serious medical needs or medical care, cruel and unusual punishment, or failure to protect claims. Plaintiff has not pleaded facts sufficient to establish intentional or attempted interference by threat, intimidation or coercion, nor has she pled facts sufficient to reasonably infer Macomber or Pfeiffer acted with reckless disregard. *Allen*, 234 Cal.App.4th at 67; *Cornell*, 17 Cal.App.5th at 803. And because Plaintiff has failed to adequately allege a constitutional claim against Macomber and/or Pfeiffer, she fails to plead a cognizable Bane Act claim against them. Therefore, the Court will recommend Defendants' motion to dismiss the Bane Act claim be granted.

**G.  California Government Code section 845.6**

Defendants contend Plaintiff's eighth cause of action fails to state a claim. Specifically, they argue Plaintiff's allegations concerning necessary medical and psychiatric care and special housing and security fail to demonstrate that Macomber or Pfeiffer knew Decedent had been stabbed and required immediate medical care or that Macomber or Pfeifer failed to summon such medical care. Defendants assert the first amended complaint "suffers from the same inadequacies

32

identified" in the Court's earlier findings and recommendations. Further, Defendants argue the allegations fail to satisfy the heightened pleading standard set forth in California Government Code section 951.

Plaintiff maintains that she has clearly established Defendants knew of the Decedent's mental disability but failed to provide medical treatment or accommodations despite their knowledge he needed immediate and higher level medical and psychiatric care, treatment, observation, and monitoring. In the alternative, Plaintiff asks the Court to grant leave to amend if it disagrees, stating she "can allege, if necessary, additional facts as to [Decedent's] need for immediate medical care and that Defendants failed to summon care."

The Applicable Legal Standards

California Government Code section 845.5 provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but … a public employee … is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov't Code, § 845.6. "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." *Jett*, 439 F.3d at 1099 (quoting *Watson v. State of California*, 21 Cal.App.4th 836, 841 (1993)). California courts have construed section 845.6 to create limited liability only "when: (1) the public employee knows or has reason to know [of the] need, (2) of immediate medical care, and (3) fails to take reasonable action to summon such medical care." *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal.App.4th 1051, 1070 (2013) (internal quotation marks omitted). This section is "very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care." *Id.*; *see Nelson v. State of California*, 139 Cal.App.3d 72, 80-81 (1982) (distinguishing violation of section 845.6 from tort of medical malpractice).

Analysis

Here, as concerns the events of October 14, 2023, there are no facts alleged indicating that

33

Macomber, Pfeiffer or any individually named Defendant failed to summon medical care. The first amended complaint merely asserts Decedent sustained multiple stab wounds and was transferred to an outside hospital for a higher level of care. *Scalia v. County of Kern*, 308 F.3d 1064, 1087 (2018) ("Care was summoned; whether Blakely should have exercised her medical judgment differently does not allege a violation of § 845.6").

Further, to the extent Plaintiff argues any individually named Defendant failed to provide immediate or higher level medical and psychiatric care, treatment, observation, and monitoring because they were aware of Decedent's mental disability, those allegations do not constitute a failure to summon medical care. *Castaneda*, 212 Cal.App.4th at 1072 ("the failure of these two public employees to provide further treatment, or to ensure further diagnosis or treatment, or to monitor [plaintiff] or follow up on his progress, are all facts which go to the reasonableness of the medical care provided, but do not constitute a failure to summon medical care"); *Nelson*, 139 Cal.App.3d at 81 ("Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist ... cannot be characterized as a failure to summon medical care"); *Scalia*, 308 F.3d 1087 (same).

In sum, the Court will recommend that Defendants' motion to dismiss the eighth cause of action be granted.

## H. Statutory Immunities

Defendants assert they are statutorily immune as concern Plaintiff's negligence-wrongful death, Bane Act, and California Government Code section 845.6 claims. They assert California generally recognizes "'that a statutory governmental immunity overrides a statute imposing liability'" and that courts have repeatedly held that the Bane Act does not include an indication that the Legislature intended public employees to be sued despite such statutory immunity.

<u>California Government Code section 820.2</u>

Defendants maintain they are immune from liability for their discretionary acts. They assert that section 820.2 "applies to basic policy decisions or activities at the 'planning' level, rather than at the 'operational' level." Defendants contend Plaintiff's allegations are conclusory and lacking in detail as to how Decedent's rights were violated. Moreover, Macomber and

34

Pfeiffer engage in policy making decisions or activities at the planning level rather than the operational level, entitling each to discretionary act immunity.

Plaintiff contends that based on the earlier findings and recommendations issued in this action, "it is improper for Defendants to raise the immunity set forth in Section 820.2"

*The Applicable Legal Standards*

California Government Code section 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012) (citation omitted); *Steinle v. City & Cnty. of S.F.*, 919 F.3d 1154, 1161 (9th Cir. 2019) (explaining that to be entitled to section 820.2 immunity, there must be a showing that the specific conduct giving rise to the suit involved the actual exercise of discretion); *Est. of Debbs v. Cnty. of Sacramento*, No. 2:20-cv-01153-TLN-DB, 2023 WL 4108320, at *7 (E.D. Cal. June 21, 2023).

*Analysis*

Generally, discretionary immunity cannot be resolved in motion to dismiss. *AE ex rel. Hernandez*, 666 F.3d at 640 (noting that "[i]t would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants"). As found by the previously assigned magistrate judge, this Court also finds that "'[g]iven the conclusory nature of the [first amended] complaint, Defendants' generalized immunity argument concerning policy decisions and activities is not sufficient'" and that the "'immunity argument is premature at this stage in the pleadings.'" (*See* Doc. 15 at 24.) The Court will recommend Defendants' motion be denied on this basis.

CDCR Immunity

Defendants contend that to the extent Plaintiff sues CDCR for state law based claims, CDCR is immune as a state entity. Defendants maintain that CDCR "'is not liable for … [a]n injury proximately caused by any prisoner,'" citing to California Government Code section 844.6, and that Plaintiff has alleged Decedent was killed by two other inmates. Further, Defendants maintain the narrow exception under section 845.6 does not apply because Plaintiff has failed to

35

adequately allege such a claim and that CDCR is immune "under Sections 815 and 844.6(a) for all other state-law claims such as negligence-wrongful death and the Bane Act."

Plaintiff maintains that CDCR is not immune from liability for the asserted state law claims because liability may be imposed where there is actual and constructive knowledge that Decedent required immediate medical care that "was not properly summoned." Plaintiff further contends section 815.2 "makes a public entity vicariously liable for the common law torts of its employees done in the scope of their employment."

*The Applicable Legal Standards*

California Government Code section 844.6 extends to public entities immunity from liability for injuries to prisoners. *Cooks v. Cal. Dep't of Corr. & Rehab.*, No. 2:20-cv-1780 KJN P, 2022 WL 2110761, at *2 (E.D. Cal. June 10, 2022), adopted, 2022 WL 4096654 (E.D. Cal. Sept. 7, 2022). One statutory exception to this immunity is provided under California Government Code section 845.6, which "imposes liability on the public employee and public entity when: (1) the public employee knows or has reason to know of the need, (2) for a prisoner's immediate medical care, and (3) fails to take reasonable action to summon such medical care. Liability under section 845.6 is established by serious and obvious medical conditions requiring immediate care." *Borges v. City of Eureka*, No. 15-cv-00846-YGR, 2017 WL 363212, at *18 (N.D. Cal. Jan. 25, 2017) (internal quotations & citations omitted). A public employee and public entity are liable under section 845.6 only for a failure to summon medical care. Any failure to provide further treatment, or to ensure further diagnosis, is not actionable under section 845.6. *Castaneda*, 212 Cal.App.4th at 1072.

The California Government Code also provides that a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code, § 815.2(a). It further provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code, § 815.2(b).

36

*Analysis*

Here, to the extent Defendants argue that the narrow exception applicable to a public entity under section 845.6 concerning immediate medical care does not apply because Plaintiff has failed to adequately allege such a claim, as previously addressed, the Court agrees. To the extent Plaintiff can be understood to argue section 844.6 triggers CDCR's vicarious liability by way of section 815.2, the Court disagrees. *See Butler*, 2026 WL 1021150, at *6 ("The exception to immunity in section 844.6(d) applies to 'a public employee.' 'Although a public entity may be vicariously liable for the acts and omissions of its employees (Gov. Code, § 815.2), that rule does not apply in the case of injuries to prisoners'") (citing *Lawson v. Super. Ct.*, 180 Cal.App.4th 1372, 1383 (2010)). And to the extent Plaintiff alleges CDCR is liable for the common law torts of its employees, exceptions to CDCR's immunity do not apply to claims for negligence, wrongful death, or claims brought under the Bane Act. *See id.* (dismissing state law claim arising under the Bane Act, and claims asserting intentional infliction of emotional distress, negligence, and wrongful death).

The Court will recommend Defendants' motion to dismiss be granted as concerns their immunity under section 845.6.

## I.   ADA/RA[3]

Defendants contend Plaintiff's ninth cause of action fails to state a plausible claim for relief. More particularly, they assert the first amended complaint alleges Decedent was a qualified individual with a mental disability, but Plaintiff has failed to explain how Decedent's disabilities substantially limited a major life activity, what services, programs, or activities Decedent was excluded from participating in because of his disability, or that Decedent was subjected to discrimination by prison officials. Defendants maintain the same conclusory allegations are present in the first amended complaint that were rejected in earlier issued findings and recommendations to dismiss this claim and that the allegations "appear to be reprinted verbatim in the amended complaint."

---

[3] Plaintiff's ninth cause of action is asserted against CDCR and Does 1 through 50.

In opposition, Plaintiff contends she has properly pled an ADA/RA claim. First, she asserts she has clearly alleged Decedent had bipolar disorder with schizophrenic tendencies requiring medication and that Defendants' argument that she "must 'prove' this at the pleading stage is contrary to the law." She further maintains she has sufficiently alleged "Defendants['] failure to properly train and supervise jail staff on how to treat, monitor, and interact with disabled persons violated his rights to equal treatment on the basis of his disability." Plaintiff argues Defendants' arguments analogizing this action to *Duvall v. County of Kitsap* "are nonsensical" as concerns a failure "to allege that his disability limited his ability to perform a major life activity" and "to request a 'reasonable accommodation" because Decedent is unable to explain or participate in the litigation so she must rely on the records in Defendants' possession" and has "no ability to corroborate or dispute these factual statements without discovery." Plaintiff maintains and alleges that "Decedent's mental disabilities were obvious," and argues because those fact issues cannot be adjudicated at this stage the proceedings, she has satisfied the relevant pleading standards. In the alternative, Plaintiff asks the Court to grant leave to amend if it disagrees, stating she "can allege, if necessary, additional facts that Decedent was excluded from participation or denied benefits and that such exclusion was because of Decedent's disability" and that she can also "allege additional facts regarding Decedent's limitations to perform major life activities based on his disability" as well as "additional facts that Decedent made a request(s) for an accommodation, or that no request was required, and that Defendants were deliberately indifferent to the request(s)."

The Applicable Legal Standards

Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability. *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002). The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs. *Id.* Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

38

42 U.S.C. § 12132.  Similarly, the RA provides:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794(a).

To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of a disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). To establish a violation of § 504 of the RA, a plaintiff must show that (1) he is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services solely by reason of a handicap; and (4) the program providing the benefit or services receives federal financial assistance. *See id.*

"The term 'services, programs, or activities' as used in the ADA is ... broad, 'bringing within its scope anything a public entity does.'" *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014) (quoting *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)). The Ninth Circuit has also instructed lower courts to focus "not so much on whether a particular public function can technically be characterized as a service, program, or activity, but whether it is a normal function of a governmental entity." *Barden*, at 1076.

The Previously Identified Deficiencies & The Amended Claim

The previously assigned magistrate judge identified the deficiencies in Plaintiff's ADA/RA claim in her earlier findings recommending dismissal of the claim:

> Plaintiffs have not alleged facts demonstrating Decedent was excluded from participation in, or denied the benefits of, any particular service or program offered by the prison because of his mental illness, or that he was subjected to any type of discrimination by reason of his disability. Conclusory allegations, without factual support, are not sufficient.

(Doc. 15 at 22.)

39

Plaintiff's first amended complaint asserts Decedent was a qualified individual "with a mental illness and medical impairments that limited and/or substantially limited his ability to care for himself and control his medical, or physical health condition …" (Doc. 19 at 31, ¶ 117.) Plaintiff alleges that CDCR's "prison and mental health services are places of public accommodation" and receive federal assistance and funds. (*Id.* at 32, ¶ 118.) She asserts CDCR, as a state department or agency, falls "within the definition of 'program or activity'" covered by the RA and contends "CDCR is also within the mandate of the RA that no person with a disability may be 'excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." (*Id*., ¶ 119.) Plaintiff alleges that "Defendants are mandated to 'develop an effective, integrated comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities …' and to ensure 'that the personal and civil rights' of persons who are receiving services under its aegis are protected." (*Id*., ¶ 120.) She maintains "Defendants are mandated under the ADA not to discriminate against any qualified individual 'on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation'" and that it is "'discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals.'" (*Id*. at 32-33, ¶¶ 122-123.)

Plaintiff alleges Defendants violated the ADA/RA in the following ways: (1) by "creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with the State's designated mental health hospital such as CDCR and facilities for persons who qualify under Penal Code § 1370(a)(2) or Welfare and Institutions Code § 5150;" (2) by failing to provide "services or accommodate DECEDENT with access to the programs and services of the CDCR or State designated mental health hospitals and facilities …;" (3) by failing to provide services or accommodate Decedent "with appropriate classification and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled and at risk for

40

assault;" (4) by failing to provide reasonable accommodations "to people in custody with mental disabilities at their hospitals, clinics, and prisons" and instead offering "different, separate, inferior, and worse" services than those provided to others; (5) by depriving Decedent of the "opportunity to participate in or benefit from the aid, benefit, or services of the CDCR …; (5) "by reason of DECEDENT's mental disabilities, Defendants did not afford him an opportunity to participate in or benefits from the aid, benefits, and services that are equal to those afforded to other non-disabled individuals;" (6) "on the basis of DECEDENT's disability," by failing to provide him an "aid, benefit, or service that was as effective in affording equal opportunity to obtain the same result, to gain the same benefit, and to reach the same level of achievement as provided to other individuals in the same situation;" and (7) by limiting Decedent "in the enjoyment of the rights, privileges, advantages, or opportunities enjoyed by others … of which DECEDENT was denied." (*Id*. at 32-33, ¶ 124.)

Plaintiff further alleges "by refusing or obstructing DECEDENT's admission to special programs, Defendants deprived him of the necessary treatment and benefits for his serious medical needs." (Id.) Next, Plaintiff alleges Defendants, in denying Decedent "the benefits of the services, programs and activities of the CDCR, deprived Decedent "of safety, necessary care and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up and supervision." (*Id*. at 34, ¶ 125.) Plaintiff contends "[t]his denial of accommodation, programs, and services was the result of [Decedent's] disability in that he was discriminated against because he was mentally ill, at risk of assault by other inmates, and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter and is unable to advocate for himself; and DECEDENT had mental impairments that substantially limited one or more of his major life activities." (*Id*.) Thus, Plaintiff alleges Decedent dies and she suffered and continues to suffer "loss of love and society" and "sustained serious and permanent injuries" entitling her to damages, penalties, costs and attorney's fees. (*Id*., ¶ 126.)

<u>Analysis</u>

The Court perceives it appears Plaintiff is asserting claims under both Title II and Title

41

III[4] of the ADA. Title II provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id*. § 12182(a). ADA regulations "indicate that only private entities are subject to Title III." *Dat Thanh Luong v. Napa State Hospital*, 411 F. Supp. 3d 615, 643 (N.D. Cal. 2019), *reversed in part on other grounds and appeal dismissed in part by Luong v. Napa State Hospital*, 831 F. App'x 855 (9th Cir. 2020); *see Ward v. Cnty. of Siskiyou*, No. 2:17-cv-00519-JAM-DMC, 2019 WL 448275, at *5 (E.D. Cal. Feb. 4, 2019) (noting that "[p]ublic entities, like the County, are covered by Title II of the ADA," and "[a]lthough an individual may bring a claim under Title II against a public entity, actions under Title III are limited to private entities"). Notably too, "Title III provides for limited remedies: Only injunctive relief is available under Title III." *Luong*, 411 F. Supp. 3d at 644 (internal quotation marks & citation omitted). Plaintiff's commingled Title II and Title III ADA claim references damages rather than injunctive relief (*see* Doc. 19 at 34, ¶ 126.) Therefore, to the extent Plaintiff's first amended complaint seeks relief under Title III, it is improper.

As concerns Title II, and as noted above, Defendants contend that although Plaintiff has alleged Decedent "was a 'qualified individual' … [who] had a mental disability ("bipolar disorder and schizophrenic tendencies")[5] … Plaintiff has not alleged how Decedent's disabilities substantially limited one or more major life activity." Additionally, Defendants challenge whether Plaintiff has plausibly alleged whether Decedent was excluded from participation in or otherwise discriminated against regarding a public entity's services, programs, or activities, and whether such exclusion or discrimination was by reason of Decedent's disability.

---

[4] S*ee* Doc. 19 at 32-33, ¶¶ 122 & 123, citing "42 U.S.C. 12182(a)" and "12182(b)(1)(A)(iii)."

[5] "Bipolar disorder is a disability under the ADA and the [RA]." *Ibrahim v. Cnty v. Los Angeles*, No. 2:18-cv-6013-CBM-SK, 2019 WL 3064424, at *2 (C.D. Cal. May 3, 2019).

First, to the extent Plaintiff alleges she had pled a cognizable ADA/RA claim because CDCR or prison officials denied Decedent medication, medical care or treatment, she fails to state a claim. As previously explained, "inadequate or lack of medical care or mental health treatment do not state a claim under the ADA or the RA." (Doc. 15 at 22-23.) "The ADA prohibits discrimination because of disability, not inadequate treatment of disability." *Simmons*, 609 F.3d at 1022 (finding claim "that Navajo County violated the ADA by depriving Jasper of 'programs or activit[ies] to lessen his depression" not actionable under the ADA), overruled in part on other grounds by *Castro*, 833 F.3d 1060.

To state a claim, Plaintiff must identify what "normal function of a governmental entity" was denied Decedent – other than a lack of medical care or treatment – and plead *facts* permitting a reasonable inference that any exclusion or discrimination was by reason of Decedent's disability. *Iqbal*, 556 U.S. at 678 (detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see, e.g., Estate of Torres*, 2024 WL 5186897, at *16 (discussing ADA/RA claims and recommending dismissal: "Plaintiffs have failed to state a claim as to the ADA, RA, and Cal. Gov. Code § 11135"); *Sweiha v. Cnty. of Alameda*, No. 19-cv-03098-LB, 2019 WL 4848227, at *7 (N.D. Cal. Oct. 1, 2019) ("Mr. Sweiha does not allege facts that plausibly establish that the defendants' use of force and subsequent treatment violated the ADA, primarily because his allegations do not plausibly show that the defendants acted intentionally, meaning, with deliberate indifference, by withholding mental-health services, or that his disability was "the motivating factor" for the exclusion from any program or benefit"); *Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2018 WL 489011, at *4 (N.D. Cal. Jan. 19, 2018) (general allegations that defendants do not evaluate or accommodate individuals with disabilities is insufficient to show how plaintiff was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the public entity").

The Court will recommend Defendants' motion to dismiss the ninth cause of action be granted.

///

43

### J.   The Survival Action

Defendants argue the survival action, Plaintiff's tenth cause of action, should be dismissed because "California's survival statutes do not create a cause of action, but provides for the post-death enforcement of a cause of action on behalf of the decedent." Thus, they contend, because Plaintiff has failed to allege "sufficient facts to state any of the purported causes of action" in her first amended complaint, she cannot state any survival claims in the absence of an underlying cognizable cause of action.

Plaintiff responds that she has "properly plead[ed] each and every cause of action in the FAC on behalf of the Decedent," that Defendants' argument lacks merit, and that tenth cause of action should not be dismissed.

The Applicable Legal Standards

"California's statutory requirements for standing to bring a survival action are stated under California Code of Civil Procedure § 377.30." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013). That statute provides: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest and an action may be commenced by the decedent's personal representative, or, if none, by the decedent's successor in interest." Cal. Code of Civ. P. § 377.30.

Analysis

To the extent Plaintiff argues she has "properly plead[ed] each and every cause of action in the FAC on behalf of the Decedent," the Court disagrees for the reasons explained above. Therefore, it will recommend Defendants' motion to dismiss the tenth cause of action be granted.

### K.   Punitive Damages

Defendants contend the Court should dismiss certain claims concerning punitive damages and attorney's fees. Specifically, Defendants argue that punitive damages are generally not available in wrongful death actions and to the extent Plaintiff seeks punitive damages for a wrongful death claim, such damages are improper. Next, Defendants argue that Plaintiff requests "punitive damages under 'federal law,'" but punitive damages may not be awarded in suits brought under the ADA/RA. Further, Defendants asserts Plaintiff's request for attorneys' fees is

44

subject to dismissal to the extent the request is based on state law or Bane Act claims.

In opposition, Plaintiff contends she may recover punitive damages in a wrongful death case through a survivor action, citing California Code of Civil Procedure section 377.34. Next, she states the first amended complaint "does not seek punitive damages" under the ADA/RA. Finally, Plaintiff maintains that under Title 42 of the United States Code, section 1988, the Court may, in its discretion, allow the prevailing party in a section 1983 action to recover reasonable attorneys' fees as part of the costs.

Analysis

Given this Court's findings, it elects not to address Defendants' arguments concerning punitive damages.

### L. Determination Regarding Amendment

Defendants argue the Court should dismiss all claims against the named Defendants, without leave to amend, because "through two iterations" of the complaint, Plaintiff sets forth only "vague and generalized conclusions," in the absence of any facts stating a claim against the remaining Defendants. They further assert that Plaintiff fails to allege "anything that can overcome the legal barriers and immunities that are raised in Defendants' initial and subsequent motions to dismiss as well as the F&Rs and order dismissing the original complaint." Defendants maintain Plaintiff "has simply realleged factually devoid and legally defective" claims that do not differ from those previously determined to be insufficient. They contend Plaintiff is represented by counsel and has had "ample time to investigate this matter" and that "some pre-lawsuit investigation … is implicitly required …." Defendants state that "it appears Plaintiff cannot state a claim against CDCR, Macomber, or Pfeiffer" and request that the first amended complaint be dismissed without leave to amend.

Plaintiff generally asserts in her opposition that should the Court find her various claims to be lacking, the Court should grant Plaintiff leave to amend.

Although the Court is concerned that Plaintiff's effort to cure previously identified deficiencies in the original complaint were not successful in the first amended complaint, Plaintiff will be granted a further opportunity to amend her complaint. At present, it does not appear to this

45

Court that amendment would be futile.

## VI.   ORDER AND RECOMMENDATIONS

Accordingly, the Court **HEREBY ORDERS** as follows:

1. The Clerk of the Court is directed to remove the phrase "on Behalf of All Wrongful Death Beneficiaries of Isaac Joseph Duran, Deceased" from the docket for this action because the operative complaint indicates Plaintiff is no longer suing in that capacity; and

2. The Clerk of the Court is directed to remove Kathleen Allison from the docket as Allison was dismissed from this action (*see* Doc. 18.)

Next, for the reasons given above, the Court **HEREBY RECOMMENDS** Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants' motion to dismiss be GRANTED as to Plaintiff's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth cause of action;

2. Defendants' motion to dismiss be DENIED as concerns discretionary act immunity pursuant to California Government Code section 820.2 and punitive damages;

3. Plaintiff be GRANTED leave to file a second amended complaint.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

///

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **May 8, 2026**

_____

UNITED STATES MAGISTRATE JUDGE